Viola **BERKEYHEISER,** **Individually and as Wife and Executirx for her Husband, William Berkeyheiser, Deceased, Appellee**

v.

**A–PLUS INVESTIGATIONS, INC. and Stanford Douglas, Jr.**

**Appeal of: A–Plus Investigations, Inc. (NJ and PA).**

Viola **Berkeyheiser, Individually and as Wife and Executirx for her Husband, William Berkeyheiser, Deceased, Appellee**

v.

**A–Plus Investigations, Inc. and Stanford Douglas, Jr.**

**Appeal of: A–Plus Investigations, Inc. (NJ and PA).**

Superior Court of Pennsylvania.

Argued May 22, 2007.

Filed Nov. 16, 2007.

executrix for her husband, William Berkeyheiser, deceased. A–Plus also appeals from the denial of its motion for a protective order regarding Appellee's discovery requests, pursuant to Pa.R.C.P. 4011 and 4012. Specifically, A–Plus asks us to determine whether the orders in question are immediately appealable pursuant to the collateral order doctrine. A–Plus also challenges the court's orders granting Appellee's discovery requests, despite Appellee's failure to establish a compelling need for the discovery documents requested, which purportedly include privileged materials and private information relating to A–Plus' clients and unrelated investigations. We hold the orders on appeal are collateral to the principal action and immediately appealable. We further hold the court failed to provide an adequate analysis for its broad discovery rulings. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

¶ 2 The relevant facts and procedural history of this appeal are as follows. A–Plus conducts private investigations on behalf of companies and individuals. In 2004, Mr. Stanford Douglas, Jr. hired A–Plus to locate Mr. William Berkeyheiser ("the decedent"). Thereafter, A–Plus provided Mr. Douglas with a report which included the decedent's home address. On March 27, 2005, Mr. Douglas went to the decedent's home and shot and killed the decedent. On December 5, 2005, Mr. Douglas pled guilty to first degree murder and was sentenced to life imprisonment.

¶ 3 Appellee commenced the instant action by filing a *praecipe* for writ of summons on March 16, 2006. On May 17, 2006, Appellee filed a complaint against A–Plus and Mr. Douglas.[1] In her complaint, Appellee alleged A–Plus was negligent for

Edward Nass, Philadelphia and Scott J. Tredwell, Princeton, NJ, for appellant.

Robert T. Tomlinson, Richboro, for appellee.

BEFORE: MUSMANNO, GANTMAN, and PANELLA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, A–Plus Investigations, Inc. (NJ and PA) ("A–Plus"), appeals from the order entered in the Bucks County Court of Common Pleas, granting the motion to strike objections to proposed subpoenas filed by Appellee, Viola Berkeyheiser, individually and as wife and

---

1. Mr. Douglas is not a party to the instant appeal.

failing to ascertain Mr. Douglas' intent before providing him with information about the decedent. Appellee demanded damages in excess of $50,000.00, including but not limited to punitive damages, delay damages, interest, attorneys' fees, and costs. On April 25, 2006, A–Plus filed a notice of removal to the United States District Court. By order entered June 30, 2006, the District Court remanded the matter to the Bucks County Court of Common Pleas.

¶ 4 Appellee immediately attempted to engage in discovery by sending A–Plus' counsel notice of intent to serve subpoenas upon entities associated with A–Plus.[2] Appellee also provided its first request for the production of documents. On July 3, 2006, Appellee filed a motion to compel depositions of A–Plus' CEO and president. The court granted Appellee's motion on July 11, 2006. On July 19, 2006, A–Plus filed objections to Appellee's proposed subpoenas. Specifically, A–Plus argued:

> Each subpoena is impermissibly vague in its description of documents requested; overly broad in terms of a time frame relevant to the events at issue in this litigation; overly broad because [it is] not limited to documents regarding events and issues at issue in this lawsuit; requests information in violation of Pa. R.C.P. 4003.1, 4003.2, 4003.3 and 4003.5, seeks information not reasonably calculated to lead to the discovery of evidence admissible in this case; is sought in bad faith; and violates Pa.R.C.P. 234.2, 4003.7 and 4011.

(Objections Pursuant to Pa.R.C.P. 4009.21, filed 7/19/06, at 1–2; R.R. at 96a–97a). Appellee responded by filing a motion to strike A–Plus' objections to the subpoenas.

¶ 5 Throughout the summer of 2006, the parties continued to litigate numerous discovery motions. On July 24, 2006, A–Plus filed a motion for a hearing on Appellee's motion to compel depositions and for a stay.[3] On August 1, 2006, Appellee filed another motion to compel discovery, claiming A–Plus had refused to comply with Appellee's first request for the production of documents. On August 3, 2006, Appellee filed two additional motions to compel discovery. In its first motion, Appellee argued A–Plus had ignored Appellee's second set of interrogatories. In its second motion, Appellee alleged A–Plus had failed to produce two employees, Ms. Barbara Conover and Ms. Lorraine Schmidt, for depositions. By order entered August 10, 2006, the court granted Appellee's motion to compel the depositions of Ms. Conover and Ms. Schmidt. In a separate order also entered on August 10th, the court scheduled a hearing on the outstanding discovery issues.

---

**2.** These entities included the New Jersey State Police Private Detective Unit, Bucks County District Attorney's Office, Philadelphia City Solicitor's Office, New Jersey Transit, IRB, Delaware State Police, Liberty Mutual, Farmers and Mechanics Bank, Prudential Associates, St. Paul Travelers, Broadspire, Nextel, Quest, Verizon, Brownyard Claims Management, Inc., Brownyard Group, LocatePlus, Inc., and Intelius. The subpoenas sought the production of documents, dating back as many as seven years, related to A–Plus' insurance coverage, telephone records, and business transactions.

**3.** Also on July 24th, A–Plus filed preliminary objections to Appellee's complaint. Appellee filed preliminary objections to A–Plus' preliminary objections on August 7, 2006. By order entered September 14, 2006, the court sustained A–Plus' preliminary objections in part. Specifically, the court struck certain paragraphs from Appellee's complaint, "because these allegations are immaterial, irrelevant, and inappropriate to the proof of [Appellee's] causes of action." (Order, entered 9/14/06, at 1; R.R. at 471a). The court overruled A–Plus' remaining preliminary objections.

¶ 6 Prior to the hearing, A–Plus filed a motion for a protective order pursuant to Rules 4011 and 4012. In its motion, A–Plus requested:

- prohibitions/limitations on information being sought and/or obtained from present and former A–Plus clients;
- prohibitions/limitations on information being sought and/or obtained from present and former insurance companies of A–Plus;
- prohibitions/limitations on information being sought and/or obtained from present and former banking and financial institutions with which A–Plus is affiliated;
- prohibitions/limitations on information that may be obtained from and about A–Plus employees;
- prohibitions/limitations on information being sought and/or obtained from A–Plus' business records and files;
- appropriate limitations on timetables for disclosure of financial information pertaining to A–Plus and its business;
- appropriate limitations on the scope of information that can be obtained *via* subpoenas, including limitations on what records can be obtained from, *inter alia*, A–Plus' telephone service providers;
- limitations on the number and scope of depositions to be conducted of A–Plus employees in this case;
- limitations on the depositions to be conducted of other individuals in this case, including the scope of their testimony;
- limitations on the subject matter and time period that can be inquired into in discovery;

- prohibitions/limitations on the scope of documents to be obtained;
- directing that certain depositions be sealed;
- and such other prohibitions/limitations as may be just under the circumstances.

(Motion for a Protective Order, filed 9/25/06, at 9–10; R.R. at 499a–500a).

¶ 7 The court conducted a hearing on September 25, 2006. At that time, counsel for A–Plus argued that many of the documents requested by Appellee were irrelevant and would not lead to the discovery of admissible information. Counsel further argued these documents included personal information from current and former clients. Counsel insisted A–Plus was required to keep this client information confidential. Counsel concluded Appellee had requested this information merely to harass A–Plus.

¶ 8 Following argument, the court reviewed A–Plus' motion for a protective order and concluded Appellee's discovery requests did not constitute harassment or vexatious behavior. The court further noted:

[D]uring the recess I did look at the various documents attached to the motion for protective order.[4] Certain of these items requested are, in fact, overbroad, and call for a legal conclusion by the answering party. I'm referring specifically to [Appellee's] third set of interrogatories directed to [A–Plus]. Numbers 26, 28, 29, 30, 31, 32 ask for the responder's impressions and understanding of the law, a subjective belief as to what the law may be.

4. A–Plus' motion for a protective order contained sixteen (16) exhibits, including Appellee's three sets of interrogatories, four re-

quests for the production of documents, and twenty-one subpoenas to entities associated with A–Plus.

We believe that that is not only irrelevant, but overbroad, so we will direct as follows:

First, within 20 days all of the requests propounded by [Appellee] to ... A–Plus ... shall be answered in full without objection.

Within 30 days all documents requested in the first, second, and third request for production of documents shall be forwarded.

We grant the protective order as to Questions 26, 28, 29, 30, 31, and 32, and will not direct [A–Plus] to answer those questions in the third set of interrogatories.

We will direct further that all requests for depositions of all persons named and noted shall be completed within 30 days.

(N.T. Hearing, 9/25/06, at 15–16; R.R. at 901a–902a).

¶ 9 Thereafter, A–Plus failed to complete all written discovery within twenty days. Consequently, Appellee requested another hearing, which the court conducted on October 13, 2006. At the conclusion of the hearing, the court ordered A–Plus to forward all outstanding discovery to Appellee's counsel no later than October 27, 2006. The court also granted Appellee's motion to strike A–Plus' objections to subpoenas. On October 18, 2006, A–Plus filed an emergency motion for reconsideration and/or to appoint a discovery master. In this motion, A–Plus maintained many of the documents requested by Appellee were privileged, and therefore not discoverable. Subsequently, the court denied Appellant's emergency motion for reconsideration.

¶ 10 On October 25, 2006, A–Plus filed two timely notices of appeal.[5] The trial court did not order A–Plus to file a concise statement, pursuant to Pa.R.A.P. 1925(b). On October 31, 2006, Appellee filed with this Court an application to quash appeal. On December 6, 2006, A–Plus filed with this Court an application for consolidation of appeals. On December 12, 2006, this Court denied Appellee's application to quash without prejudice to Appellee's right to raise the issue at the time scheduled for argument or submission before a panel of this Court. On January 8, 2007, this Court granted A–Plus' application for consolidation.

¶ 11 A–Plus now raises four issues for our review:

WHETHER THE TRIAL COURT ERRED IN ORDERING DISCLOSURE OF PRIVILEGED ATTORNEY/CLIENT COMMUNICATIONS?

WHETHER THE TRIAL COURT ERRED IN ORDERING DISCLOSURE OF PRIVILEGED WORK PRODUCT?

WHETHER THE TRIAL COURT ERRED IN ORDERING DISCLOSURE OF DOCUMENTS WHICH VIOLATE THE RIGHT TO INFORMATIONAL PRIVACY OF [A–PLUS], ITS PRINCIPALS AND ITS CLIENTS WHO ARE NON–PARTIES TO THIS LITIGATION?

WHETHER THE APPEAL IS PROPERLY BEFORE THIS COURT UNDER THE COLLATERAL ORDER DOCTRINE?

(A–Plus' Brief at 4).

 ¶ 12 For ease of disposition, we initially address A–Plus' fourth issue. A–Plus concedes that, generally, appellate courts can review only final orders. Nev-

---

5. The first notice of appeal is from the order entered in open court on October 13, 2006, granting Appellee's motion to strike A–Plus' objections to the subpoenas. The second notice of appeal is from the order entered in open court on September 25, 2006, denying A–Plus' motion for a protective order.

ertheless, A–Plus insists the orders in question relate to the issue of privilege, which is separate and distinct from the underlying merits of the instant case. A–Plus asserts Appellee's subpoenas are overly broad and require the disclosure of privileged material and work product. Further, A–Plus maintains disclosure of the requested documents implicates parties outside this litigation. A–Plus claims that the disclosure of privileged information is irreversible and may destroy its relationship with its clients; thus, A–Plus will suffer irreparable harm if this appeal is postponed. As such, A–Plus concludes the orders in question are immediately appealable pursuant to the collateral order doctrine. We agree.

¶ 13 Pennsylvania law makes clear:

[A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa. C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*Stahl v. Redcay,* 897 A.2d 478, 485 (Pa.Super.2006), appeal denied, 591 Pa. 704, 918 A.2d 747 (2007) (quoting *Pace v. Thomas Jefferson University Hosp.,* 717 A.2d 539, 540 (Pa.Super.1998)). A final order is one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. *In re N.B.,* 817 A.2d 530, 533 (Pa.Super.2003) (citing Pa.R.A.P. 341(b)(1)-(3)). "[T]he appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Stahl, supra* at 485 (quoting *Pace, supra* at 540).

¶ 14 A collateral order is defined in Rule 313 as follows:

### Rule 313. Collateral Orders

\* \* \*

(b) **Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). Our Supreme Court explained:

[T]he collateral order doctrine is a specialized practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule.

*Melvin v. Doe,* 575 Pa. 264, 272, 836 A.2d 42, 47 (2003). "To that end, each prong of the collateral order doctrine must be met before an order may be considered collateral." *Id.*

¶ 15 To qualify as a collateral order under Rule 313, the order must be separate and distinct from the underlying cause of action. *Feldman v. Ide,* 915 A.2d 1208 (Pa.Super.2007) (citing *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547 (1999)). Additionally, "it is not sufficient that the issue under review is important to a particular party; it 'must involve rights deeply rooted in public policy going beyond the particular litigation at hand.'" *Stahl, supra* at 485 (quoting *Melvin, supra* at 272, 836 A.2d at 47). "Finally, there must be no effective means of review available after an Order requiring the production of documents is reduced to judgment." *Feldman, supra* at 1211.

¶ 16 Significantly, Pennsylvania courts have held that discovery orders involving

potentially confidential and privileged materials are immediately appealable as collateral to the principal action. *See, e.g., Ben, supra* (allowing appeal from discovery order compelling production of putatively privileged documents, where resolution of issue of whether documents were subject to executive or statutory privilege implicated rights rooted in public policy and affected individuals other than those involved in particular litigation; in weighing competing consideration of costs of piecemeal review against costs of delay, public interests, expressed in form of executive privilege and statutory privileges, tipped balance in favor of immediate appellate review; order permitting discovery of investigative files was such that if review were postponed until final judgment in case, claim would be irreparably lost, as disclosure of documents could not be undone). This Court has also recognized that an appellant's colorable claim of attorney-client and attorney work-product privilege can establish the propriety of immediate appellate review. *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1220 (Pa.Super.2003).

¶ 17 Instantly, Appellee initiated twenty-one subpoenas, four separate requests for production of documents, and three separate sets of interrogatories. The documents sought included, but were not limited to: all of A–Plus' reports to the legal arm of the City of Philadelphia for the past five years; its corporate financial and banking records for the past five years; its phone records for the past two years; its insurance claims information for the past five years; its client identification and payment documentation for the past four years; its communications with anyone, including counsel, regarding this matter,

and a "complete mirror" of all electronic data regarding any information requested in this discovery. (Emergency Motion for Reconsideration and/or to Appoint a Discovery Master, filed 10/18/06, at 2–3; R.R. at 681a–682a).

¶ 18 Under these circumstances, A–Plus' assertion that Appellee seeks privileged information can be addressed without an analysis of A–Plus' alleged negligence in disclosing information about the decedent to Mr. Douglas. Thus, the issue of privilege relating to Appellee's requested documents is separate from the merits of this case. *See* Pa.R.A.P. 313(b). Additionally, the issues of attorney-client and work-product privileges, as well as privacy concerns, implicate rights deeply rooted in public policy, especially where the disclosure of such information affects individuals other than those involved in this particular case. *See Ben, supra.* Furthermore, enforcement of the orders would force A–Plus to disclose the disputed documents; thus, there would be no effective means of review available. *See Feldman, supra.* As such, the orders on appeal are collateral to the principal action and immediately appealable.[6] *See Melvin, supra.*

¶ 19 In the remaining three issues, A–Plus contends Appellee's discovery requests are overly broad and unlimited by relevant time frames or subject matter. A–Plus argues such requests do not address whether the documents sought could reasonably be calculated to lead to admissible testimony; rather, Appellee designed the discovery requests in bad faith, to destroy A–Plus' business relationships with its clients. A–Plus maintains many of the requested documents are patently irrelevant and involve others unrelated to this litigation. A–Plus further asserts Ap-

---

**6.** Accordingly, we deny Appellee's motion to quash the appeal, which Appellee renewed in her appellate brief.

pellee failed to establish a compelling need for the requested documentation.

¶ 20 Moreover, A–Plus insists the documents requested by Appellee are not discoverable, as the attorney-client privilege, work-product, and general constitutional guarantee to privacy protect such information. A–Plus claims many of Appellee's discovery requests are so broad that they necessarily include disclosure of communications between attorneys and clients. A–Plus alleges Appellee's requests also will necessarily include documents containing A–Plus' mental impressions, conclusions, or opinions made during investigations where A–Plus acted as a representative of a party. A–Plus avers these discovery requests, which require private and confidential information, violate both the United States and Pennsylvania Constitutions. A–Plus concludes this Court must vacate the trial court's discovery orders and remand for the entry of new orders, which protect materials falling under the attorney-client privilege, work-product doctrine, and all private information relating to A–Plus' clients and unrelated investigations. We agree.

■ ¶ 21 "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578, 585 (Pa.Super.2006) (quoting *McNeil v. Jordan,* 586 Pa. 413, 426, 894 A.2d 1260, 1268 (2006)). "To the extent that the question involves a pure issue of law, our scope . . . of review [is] plenary." *Id.*

■ ¶ 22 "The trial court is responsible for '[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure.'" *PECO Energy Co. v. Insurance Co. of North America,* 852 A.2d 1230, 1233 (Pa.Super.2004) (quoting *Hutchison v. Luddy,* 414 Pa.Super. 138, 606 A.2d 905, 908 (1992)). The Rules of Civil Procedure govern discoverable materials as follows:

**Rule 4003.1. Scope of Discovery Generally. Opinions and Contentions**

(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(c) Except as otherwise provided by these rules, it is not ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact.

Pa.R.C.P. 4003.1.

¶ 23 Nonetheless, Rule 4011 limits the scope of discovery.

**Rule 4011. Limitation of Scope of Discovery and Deposition**

No discovery or deposition shall be permitted which

(a) is sought in bad faith;

(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;

(c) is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6;

(d) is prohibited by any law barring disclosure of mediation communications and mediation documents; or

(e) would require the making of an unreasonable investigation by the deponent or any party or witness.

Pa.R.C.P. 4011 (note omitted). *See also J.S. v. Whetzel*, 860 A.2d 1112 (Pa.Super.2004) (holding trial court erred in permitting discovery requesting "unfettered" production of "any and all" of appellant's tax forms, where such documentation contained information unrelated to case); *Gocial, supra* (holding trial court erred in permitting as discoverable entire privilege log submitted by attorney, where court did not rule on relevance of each item or explain why attorney-client and work-product privileges raised were inapplicable).

 ¶ 24 Certain materials are privileged and beyond the scope of discovery. "The attorney-client privilege has been a part of Pennsylvania law since the founding of the Pennsylvania colony, and has been codified in our statutory law." *Id.* at 1221 (quoting *Commonwealth v. Noll*, 443 Pa.Super. 602, 662 A.2d 1123, 1126 (1995), *appeal denied*, 543 Pa. 726, 673 A.2d 333 (1996)). The provision is defined by statute as follows:

### § 5928. Confidential communications to attorney

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928. The purpose of the attorney-client privilege is to "foster a confidence between attorney and client that will lead to a trusting and open dialogue." *Gocial, supra* at 1222. However, "the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services." *Id.*

¶ 25 The work product doctrine provides:

### Rule 4003.3. Scope of Discovery. Trial Preparation Material Generally

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3.

¶ 26 Additionally: "Our Supreme Court has recognized that the privacy interests protected by the federal Constitution receive the same protections from Pennsylvania's Constitution." *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa.Super.2004). Cases concerning the constitutional right to privacy involve two separate interests: (1) the individual interest in avoiding disclosure of personal matters; and (2) the interest in making certain kinds of important decisions. *Id.* at 1205–06. However, "the right [to privacy] is not an unqualified one; it must be balanced against weighty competing private and state interests." *Id.* at 1207 (quoting *Stenger v. Lehigh Valley Hospital Center*, 530 Pa. 426, 434, 609 A.2d 796, 800 (1992)).

¶ 27 Instantly, the court conducted a hearing on September 25, 2006 to evaluate whether Appellee's requests were discoverable. Counsel for A–Plus argued that many of the requested documents were irrelevant and would not lead to the discovery of admissible information. Counsel further argued that many of the requested documents included confidential, personal information from current and former clients. The court, however, determined that "by and large, what has been requested may lead to the free flow of information necessary for plaintiff, and is permitted under the Rules." (*Id.* at 15; R.R. at 901a). As such, the court compelled A–Plus to comply with the majority of Appellee's requests. At a second hearing on October 13, 2006, the court again ordered A–Plus to comply with Appellee's requests.

¶ 28 Although the court conducted two hearings on the issue of discovery, these hearings were almost exclusively devoted to receiving argument from counsel. The transcripts do not indicate how or why the court came to its conclusions regarding the propriety of Appellee's numerous, detailed requests. Likewise, the court's Rule 1925(a) opinion offers little analysis of the requests contained in Appellee's three sets of interrogatories, four requests for the production of documents, and twenty-one subpoenas.

¶ 29 On this record, then, we cannot review whether, or to what extent, A–Plus' asserted privileges apply. Despite A–Plus' arguments, the court did not require Appellee to establish that the information sought was reasonably calculated to lead to the discovery of admissible evidence. The court also failed to discuss whether the aforementioned privileges barred the discovery of Appellee's requests. *See Gocial, supra.*

¶ 30 Additionally, the court did not appear to balance the privacy interests of A–Plus and its clients against Appellee's asserted need for the requested documents. *See Jones, supra.* Instead, the court made a blanket statement that the majority of Appellee's requests "may" lead to the discovery of admissible evidence. The court then ordered Appellant to comply without objection to the rest of the discovery requests. Absent a studied analysis by the court of the voluminous discovery requests, we are unable to review whether the materials and depositions requested might produce information that "appears reasonably calculated to lead to the discovery of admissible evidence" under Rule 4003.1(b). Pursuant to this rule, the court must ensure Appellee's discovery requests are tailored to her specific negligence cause of action. The court should not permit Appellee's requests, if they represent a mere "fishing expedition" or an obvious attempt to force A–Plus into a settlement. Thus, we conclude we must vacate and remand so the court can consider, rule on, and explain its rulings regarding each of Appellee's discovery requests the court granted. *In camera* review and redaction might also be required. In the event the court deems certain third-person documents discoverable, these documents must be redacted to protect the personal information of those individuals not involved in the pending litigation.

¶ 31 Based upon the foregoing, we hold the orders on appeal are collateral to the principal action and immediately appealable. We further hold that the court failed to provide adequate analysis for its broad discovery rulings. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

¶ 32 Orders vacated; case remanded for further proceedings. Jurisdiction is relinquished.