J-A26038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  TRUST UNDER DEED OF TRUST  :  IN THE SUPERIOR COURT OF
OF SARAH MELLON SCAIFE, SETTLOR  :  PENNSYLVANIA
DATED DECEMBER 30, 1935  :
  :
  :
  :
  :
APPEAL OF:  TRIB TOTAL MEDIA, INC.  :  No. 243 WDA 2016

Appeal from the Order January 14, 2016
in the Court of Common Pleas of Allegheny County,
Orphans' Court Division, No(s): 6469 of 2014

BEFORE:  BENDER, P.J.E., RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:  **FILED FEBRUARY 28, 2017**

Trib Total Media, Inc. ("TTM") appeals from the Order of the Orphans'

Court, which denied TTM's Motion to reconsider the court's Order denying

TTM's Motion to Quash Subpoena and for Protective Order ("Motion to

Quash").[1]  We affirm.

In its Opinion, the Orphans' Court set forth the relevant history of the

instant appeal as follows:

> Jennie Scaife and David Scaife (Petitioners) brought an
> action [in 2014] for an accounting of the Trust Under Deed of
> Trust of Sarah Mellon Scaife, Settlor, dated December 30, 1935.
> Petitioners allege that Trustees H. Yale Gutnick, James N.
> Walton, and PNC Bank ["Trustees"], *inter alia*, improperly

---

[1] "[D]iscovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under [Pa.R.A.P.] 313." **Commonwealth v. Flor**, 136 A.3d 150, 155 (Pa. 2016); **see also Dodson v. Deleo**, 872 A.2d 1237, 1240 (Pa. Super. 2005) (recognizing the appealability of an order requiring the disclosure of privileged information because, "once disclosed, the confidentiality of potentially privileged information is irreparably lost.").

distributed Trust corpus to fund [TTM's] operations. Following the filing of an accounting, Petitioners filed objections to the funding of TTM.

[On November 4, 2015, Petitioners served Notice of their intent to subpoena TTM, and compel the production of certain records. Trustees filed no objections to Petitioners' Notice.] On December 3, 2015, Jennie Scaife served a subpoena on TTM for the production of documents. On December 18, 2015, TTM filed a Motion to Quash []. A supporting brief filed that same day argued that the documents and information sought *via* subpoena were not relevant to the claims and defenses of the case, and the production of documents would subject TTM to unreasonable annoyance, embarrassment, burden, and expense.

On December 21, 2015, [the Orphans'] Court issued an Order that Jennie Scaife file a response to TTM's pleadings on or before January 6, 2016,[2] and setting argument for January 14, 2016. On January 6, 2016, both Petitioners filed a Response in Opposition to [TTM's] Motion to Quash [].

On January 12, 2016, TTM filed a Reply to Petitioners' response in Opposition to Motion to Quash ….[3] Within this [R]eply, in argument 2(b) located on page 11 of TTM's filing, TTM for the first time raised the issue that Petitioner's subpoena would cause the disclosure of confidential and proprietary information. On January 14, 2016[,] this Court heard argument on the matter and subsequently issued an Order denying the requested relief.

On January 15, 2016, TTM filed a Motion for Partial Reconsideration of the January 14, 2016 Order with Respect to Records after October 2011.[4] On January 19, 2016, both

---

[2] David N. Scaife had not served a subpoena on TTM for the production of documents.

[3] The filing occurred twenty-five (25) days after TTM filed its initial [M]otion and supporting brief. The Orphans' Court had not granted leave permitting the filing.

[4] This [M]otion for partial reconsideration added a new argument into the mix[,] not previously raised[,] concerning records generated after October 2011.

Petitioners filed a Response. On January 21, 2016, the Court denied the [M]otion to reconsider. On February 16, 2016, TTM filed a Notice of Appeal.

Orphans' Court Opinion, 4/8/16, at 1-2 (footnotes in original).

On appeal, TTM presents the following claims for our review:

1. TTM argued that the Court should not compel TTM to produce its confidential and proprietary information in a litigation to which it is not a party in its Brief in Support of its [M]otion to Quash, its Reply Brief in Support of its Motion to Quash, and at Oral Argument regarding its Motion to Quash. It has also included that position in its Concise Statement of Errors. Has TTM preserved this issue for appeal?

2. The [s]ubpoena seeks TTM's trade secret, proprietary and confidential information[,] such that its competitors could take advantage of such information and significantly harm TTM in the marketplace. … Under [the Superior] Court's reasoning in **Berkeyheiser**,[5] does the sensitive, confidential and proprietary nature of the subpoenaed documents outweigh the limited value of the information sought from non-party TTM[,] such that the [s]ubpoena should have been quashed?

3. Petitioners advance objections to the Account[,] which all relate to the state of mind of the [T]ustees. TTM does not possess documents which could possibly show the state of mind of the [T]rustees. Should discovery of TTM's irrelevant documents have been precluded?

4. Petitioners advance objections to trust distributions made prior to October 2011. All distributions of trust principal and income were complete by July 2014. Should discovery of TTM's documents that post-date all relevant events have been precluded?

Brief for Appellant at 3-4 (issues renumbered, some extraneous argument omitted, footnote added).

---

[5] **Berkeyheiser v. A-Plus Investigations, Inc.**, 936 A.2d 1117 (Pa. Super. 2007).

- 3 -

TTM first claims that it properly preserved its challenge to the subpoena based upon its claim that the subpoena would require the production of TTM's "confidential" and "proprietary" information. *Id.* at 22. According to TTM, it "raised this argument on multiple occasions in connection with its Motion to Quash before the [Orphans' Court]." *Id.* TTM takes issue with the Orphans' Court's statement that TTM had waived its claim because it was not asserted in TTM's Motion to Quash Subpoena and for Protective Order, or in TTM's Opening Brief in support of its Motion. *Id.* at 23.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *Berkeyheiser*, 936 A.2d at 1125 (citations omitted). "To the extent that the question involves a pure issue of law, our scope … of review [is] plenary." *Id.*

Similarly, "the standard of review regarding a motion to quash a subpoena is whether the [Orphans' Court] abused its discretion." *Leber v. Stretton*, 928 A.2d 262, 266 (Pa. Super. 2007). Regarding requests for protective orders,

> [t]here are no hard-and-fast rules as to how a motion for a protective order is to be determined by the court. Whether to grant or deny the motion, and what kind or kinds of protective orders to issue are matters that lie within the sound judicial discretion of the court, and the court's determination as to these matters will not be disturbed unless that discretion has been abused.

- 4 -

***Hutchison v. Luddy***, 606 A.2d 905, 908 (Pa. Super. 1992) (internal citations and quotations omitted). An abuse of discretion is not merely an error of judgment; it is judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by evidence of record. ***Fanning v. Davne***, 795 A.2d 388, 393 (Pa. Super. 2002).

Under Pa.R.C.P. 4003.1,[6] "discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." ***Berg v. Nationwide Mutual Ins. Co., Inc.***, 44 A.3d 1164, 1178 n.8 (Pa. Super. 2012).

> Any party may serve … a subpoena upon a person not a party pursuant to Rules 4009.21 through 4009.27 to produce and permit the requesting party, or someone acting on the party's behalf, to inspect and copy any designated documents (including writings, drawings, graphs, charts, photographs, and electronically stored information), or to inspect, copy, test or sample any tangible things or electronically stored information, which constitute or contain matters within the scope of Rules 4003.1 through 4003.6 inclusive and which are in the possession, custody or control of the party or person upon whom the request or subpoena is served, and may do so one or more times.

---

[6] Orphans' Court Rule 3.6 provides that

> [t]he local Orphans' Court … may prescribe the practice relating to … discovery [and the] production of documents …. To the extent not provided for by such general rule or special order, the practice relating to such matters shall conform to the practice in the Trial or Civil Division of the local Court of Common Pleas.

Pa.O.C.R. 3.6.

Pa.R.C.P. 4009.1(a). A party may object to a notice to serve a non-party with a subpoena for the production of documents, "by filing of record and serving a copy of the objections upon every other party to the action." Pa.R.C.P. 4009.21(c). If objections are not received, "the subpoena may be served subject to the right of any party or interested person to seek a protective order." Pa.R.C.P. 4009.21(c)(2).

Rule 234.4 provides that

a motion to quash a subpoena ... or notice to produce may be filed by … the person served or by any other person with sufficient interest. After [a] hearing, the court may make an order to protect a party, witness or other person from unreasonable annoyance, embarrassment, oppression, burden or expense.

Pa.R.C.P. 234.4(b); *see also* Pa.R.C.P. 4012(a) (stating that, "[u]pon motion by … the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense …."). Nevertheless, "evidentiary privileges have been viewed by [the Pennsylvania Supreme] Court to be in derogation of the search for truth, and are generally disfavored for this reason." *Octave v. Walker*, 103 A.3d 1255, 1262 (Pa. 2014). As such, "evidentiary privileges are to be narrowly construed[.]" *Id.*

Here, no party filed objections to Petitioners' Notice of their intention to serve TTM with a subpoena. TTM responded to the subpoena by filing its Motion to Quash, which asserted two bases for relief: (1) the documents

- 6 -

sought by the subpoena were irrelevant; and (2) production of the requested documents would subject TTM "to unreasonable annoyance, embarrassment, burden, and expense."  Motion to Quash Subpoena, 12/21/16.  In its Brief supporting the Motion to Quash, TTM argued that the documents sought were not relevant to the pending action, and not reasonably calculated to lead to the discovery of admissible evidence.  Brief in Support of Motion to Quash, 12/21/15, at 3.  TTM generally asserted that the discovery sought by the subpoena "would cause unreasonable annoyance, embarrassment, burden and expense to TTM."  *Id.* at 6 (initial capitalization omitted).  TTM described the information sought as private, highly sensitive financial business records and information, dating back 24 years.  *Id.* at 6-7.  TTM further argued that

> [p]roducing these documents and information, if even possible, would cause extreme burden, expense, and annoyance to TTM— to say nothing of the embarrassment of having the entirety of its financial and business records, including documents relating to losses to TTM, spanning more than two decades[,] made available to the parties of a civil action to which TTM itself is not even a party.  There is also a concern that such private internal and highly sensitive information would be made public….

*Id.* at 7.  Petitioners filed a Response to TTM's Motion to Quash and supporting brief, addressing TTM's challenge to the relevance of the documents requested, and TTM's claim of undue burden, hardship and embarrassment.

On January 14, 2016, TTM filed a Reply to the Petitioners' Response ("TTM's Reply").  On page 11 of TTM's Reply, TTM, for the first time, claimed

that the subpoena sought confidential and proprietary information. TTM's Reply at 11.

In its Opinion, the Orphans' Court declined to consider TTM's claim that the subpoenaed records contained confidential and proprietary information:

> [T]his issue was not raised in TTM's initial [M]otion and supporting brief. In fact, said issue was only brought before [the Orphans'] Court in TTM's [R]eply [], which was filed less than 48 hours before the scheduled argument. The [c]ourt considers this argument waived because it was untimely raised in a reply pleading, which was not authorized by the [c]ourt, and because the Petitioners were not afforded ample opportunity to address the issue. Further, had the issue been properly raised, a hearing would have been held with respect to the alleged confidentiality of said information. Since this particular objection filed by TTM was not timely raised before this [c]ourt, it is waived for appeal purposes.

Orphans' Court Opinion, 4/8/16, at 2-3. The record supports the Orphans' Court's determination, and we discern no abuse of discretion in this regard. We therefore adopt the Orphans' Court's reasoning, and affirm its resolution of TTM's claim on the basis of this reasoning, as set forth above. ***See id.***

In its second claim, TTM argues that the Orphans' Court improperly failed to engage in the "required analysis under ***Berkeyheiser***[,]" in denying its Motion to Quash. Brief for Appellant at 14. Under ***Berkeyheiser***, TTM asserts, the relevancy of the requested information is not assumed. ***Id.*** at 15. Rather, TTM argues that the court addressing a motion to quash must "(1) require the subpoenaing party to establish that the information sought is likely to lead to the discovery of admissible

information, and (2) balance the privacy interests of the moving party against the subpoenaing party's asserted need for the requested documents." *Id.* at 14. According to TTM, under ***Berkeyheiser***, the discovery sought from TTM should have been disallowed. *Id.* at 16.

TTM contends that the subpoena "seeks a vast amount of confidential, proprietary and trade secret information from TTM." *Id.* at 17. TTM argues that the risk to TTM is particularly strong, in that the subpoena did not limit the requested documents to the period relevant to the objections, thereby requiring TTM to produce its current proprietary information. *Id.* TTM further argues that the Protective Order, put in place three months prior to the subpoena, is not adequate to protect TTM's interests. *Id.* at 18. TTM points out, as support, a statement by Petitioners' counsel at argument that, "if [the prior Protective Order] is not satisfactory to [TTM's counsel], we could do other aspects of a confidential agreement, but there are ways to address that as well." *Id.* at 19 (citation omitted). TTM asserts that it was not involved in the drafting of the Protective Order, and that the Order does not include the ability to designate certain documents as "attorneys-eyes only, which is the level of protection necessary for TTM to protect the confidentiality of its most sensitive documents[,] specifically as it relates to TTM's competitors." *Id.* TTM further discusses the burden it would face in protecting the information sought in future court proceedings and filings. *Id.* at 19-21.

"The trial court is responsible for [overseeing] discovery between the parties and[,] therefore[,] it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discover[y] of matters allowed by the Rules of Civil Procedure." *PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1233 (Pa. Super. 2004) (citation omitted); *accord Berkeyheiser*, 936 A.2d at 1125. Regarding the scope of discovery, Pennsylvania Rule of Civil Procedure 4003.1 provides that,

> (a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ….
>
> (b) It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Pa.R.C.P. 4003.1(a), (b). Thus, discovery "is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." *George v. Schirra*, 814 A.2d 202, 205 (Pa. Super. 2002) (citations omitted). However, no discovery or deposition shall be permitted which "would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;" "is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6;" or "would require

- 10 -

the making of an unreasonable investigation by the deponent or any party or witness." Pa.R.C.P. 4011(b), (c), (e).

Upon review, we conclude that TTM's reliance upon **Berkeyheiser** is misplaced. In **Berkeyheiser**, this Court held that the trial court had erred in allowing the plaintiffs' broad discovery requests, when the information requested purportedly would include "privileged materials and private information" relating to the defendants' clients.[7] **Berkeyheiser**, 936 A.2d at 1119. This Court further reasoned that

> privacy interests protected by the federal Constitution receive the same protections from Pennsylvania's Constitution. Cases concerning the constitutional right to privacy involve two separate interests: (1) the individual interest in avoiding disclosure of personal matters; and (2) the interest in making certain kinds of important decisions. However, the right [to privacy] is not an unqualified one; it must be balanced against weighty competing private and state interests.

*Id.*

Here, TTM waived its claim that the requested discovery should be restricted because of its confidential and proprietary nature. **See** Orphans' Court Opinion, 4/8/16, at 3. Consequently, TTM's challenge based upon **Berkeyheiser**, and the balancing test appropriate when confidential, proprietary and/or constitutionally protected information is involved, is not applicable.

---

[7] Ultimately, this Court agreed with the defendant that "many of [the plaintiff's] discovery requests are so broad that they necessarily include disclosure of communications between attorneys and clients," and thus that the information was not discoverable under the attorney-client privilege. **Id**. at 1125.

In its third claim, TTM argues that the Orphans' Court improperly denied its Motion to Quash, because the information sought is not relevant to Petitioners' claims. Brief for Appellant at 27, 28. TTM asserts that the Trustees' state of mind and motives can only be determined based upon information actually considered by the Trustees. *Id.* at 28, 29. TTM additionally contends that the Orphans' Court should have directed Petitioners first to seek the information from the Trustees. *Id.* at 30.

Regarding TTM's claim, the Orphans' Court stated the following:

The financial records of TTM are, however, relevant both to Petitioners' claims and the possible defenses of the Trustees. For instance, Petitioners argue that no reasonable trustee would distribute trust principle to fund a business such as TTM[,] because the amounts needed to fund the business would continue to increase year after year. Petitioners want the financial documents, so that they can prove what the Trustees knew or should have known, when they knew it or should have known it, and the reasonableness of their actions[,] in light of the information they had. The Petitioners would be hampered in putting forth their case as to a breach of fiduciary duty or a waste of trust assets if the information requested in the subpoena was not turned over by TTM.

Orphans' Court Opinion, 4/18/16, at 3. Discerning no abuse of discretion or error, we agree with and adopt the reasoning of the Orphans' Court, and affirm on this basis. *See id.*

In its fourth and final claim, TTM argues that the Orphans' Court improperly denied its Motion to Quash as to documents that post-date the challenged distributions. Brief for Appellant at 31. TTM argues that Petitioners did not challenge distributions taking place after October 2011

and, therefore, such documents are irrelevant. *Id.* TTM further asserts that the Orphans' Court improperly denied its Motion to Quash as to documents dated after July 2014. *Id.* TTM disputes the Orphans' Court's conclusion that its claims are waived, based upon TTM's failure to raise them until its Motion for Partial Reconsideration and its Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. *Id.* at 32.

The Pennsylvania Rules of Appellate Procedure provide that an issue cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Further, an issue is not preserved when it is first raised in a motion for reconsideration or in a Pa.R.A.P. 1925(b) concise statement. *See Mason-Dixon Resorts, L.P. v. Pa. Gaming Control Bd.*, 52 A.3d 1087, 1112 (Pa. 2012) (deeming waived an issue not raised until a motion for reconsideration); *Hinkal v. Pardoe*, 133 A.3d 738, 746 (Pa. Super. 2016) (*en banc*) (stating that an issue is not preserved for review when it is first raised in the Pa.R.A.P. 1925(b) concise statement).

Upon review, we discern no abuse of discretion or error by the Orphans' Court in deeming these claims waived. *See* Orphans' Court Opinion, 4/18/16, at 3-4 (stating that because the Orphans' Court first became aware of TTM's claim (regarding the records generated after October 2011) in TTM's Motion for partial reconsideration, and of the claim regarding the records generated after October 2014 in the Rule 1925(b) Concise Statement, the claims are now waived).

- 13 -

Accordingly, we affirm the Order of the Orphans' Court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017