J-A05024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID O. BRAND | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LEIGH A. BRAND, AND SANDRA G. BRAND, F/K/A SANDRA G. SPEAR | : | No. 1317 WDA 2023 |
| APPEAL OF: ROBERT N. BRAND | : | |

Appeal from the Order Entered October 6, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD. 23-2097

BEFORE: OLSON, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.:            **FILED: AUGUST 26, 2025**

Appellant, Robert N. Brand, appeals from the order entered in the Allegheny County Court of Common Pleas, which granted the motion seeking a determination of Appellant's claim of attorney-client privilege filed by Appellee, David O. Brand. We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> Appellant, recognizing he was entering his later stages of life, began to estate plan sometime in 2013. At the time of said planning process Appellant and his eldest son, Leigh A. Brand (the "co-defendant son"), had a strained relationship. Appellant executed a Durable Financial Power of Attorney ("POA") on April 19, 2018. The POA identified Barton Z. Cowan[, Esquire] as Appellant's agent and identified

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellant's daughter, Laura A. Brand, and youngest son, [Appellee], as the successor agents if Mr. Cowan is unwilling or unable to serve. Appellant is the trustee of the Carol Ann Brand Family Trust U/T/A February 22, 2003 ("the Trust"). On July 16, 2018, Appellant, as trustee, entered into an Option to Purchase Real Property Agreement (the "Option Agreement") for a property in Sun Valley, Idaho (the "Sun Valley Property") held by the Trust. [Appellee] paid two thousand five hundred dollars ($2,500) in consideration for the Option Agreement, including granting a License of Entry to [Appellee]. The Sun Valley Property was a frequent vacation spot of [Appellee] and his family. The option allowed for [Appellee] to purchase the Sun Valley Property upon the death of Appellant. On August 27, 2018, Appellant established the Robert N. Brand Revocable Trust Agreement. The children of Appellant are to receive equal pecuniary distributions from the trust, with the balance to be divided into two equal shares among [Appellee] and Laura.

(Trial Court Opinion, filed 6/7/24, at 1-2) (internal footnotes omitted).

On October 16, 2020, Appellant married his second wife, Sandra Brand.[1] Thereafter, Appellant suffered a series of strokes in September 2021. Appellee frequently visited Appellant at the rehabilitation facility in the weeks following the strokes. By December 2021, however, Appellee received two letters from Appellant directing Appellee not to enter Appellant's home in Pennsylvania or the Sun Valley property.

On January 9, 2022, Mr. Cowan contacted the Willows[, Appellant's rehabilitation facility], as Appellant's agent, in an attempt to receive information about the status of Appellant. He was informed that there was no POA on record. The next day a copy of the POA was sent to the facility. The Willows, Appellant and co-defendant wife, determined that [Appellee] would be permitted to have

_____

[1] Sandra Brand is now deceased. Counsel filed notice of her death on September 19, 2023, and her estate was substituted as a party.

scheduled, supervised visits with Appellant. On January 13, 2022, an updated POA and Living Will of Appellant were sent to the Willows. The next day, Appellant was discharged from The Willows and was transferred to Shirley Ryan Ability Lab ("Shirley Ryan"). [Appellee] visited Appellant at Shirley Ryan on January 20th; Appellant was not aware of where he was or how he arrived in Chicago. A letter was sent to Mr. Cowan on February 5, 2022, signed by Appellant, stating that Appellant had executed a new POA on January 12th. The letter indicated Appellant executed a revocation of Mr. Cowan as his POA on January 28th.

[Appellee] received a letter on February 11th, from an attorney located in Idaho, Lee Ritzau, regarding the Sun Valley Property and the Option Contract associated with it. The letter alleges that [Appellee] never paid the two thousand five hundred dollars ($2,500.00) to the Carol Ann Brand Family Trust and that Appellant had revoked the offer. [Appellee] in an email chain contends he paid the Option disputing Mr. Ritzau's allegation. In the email chain was an email between Leigh Brand and Mr. Ritzau about future planning for the Option Agreement if [Appellee] was able to show proof of execution.

(*Id.* at 5-6) (internal footnotes omitted).

On February 14, 2023, Appellant filed a complaint against Sandra and Leigh Brand, which included counts for defamation, intentional infliction of emotional distress, and civil conspiracy. On August 31, 2023, Appellee filed a motion for sanctions and determination of Appellant's claim of attorney-client privilege. Among other things, Appellee explained that Appellant had invoked the privilege to prevent the discovery of certain emails he exchanged with counsel discussing estate planning issues ("the emails"). The court further described the emails as follows:

The subject-matter involved emails addressing estate planning by Appellant between Appellant and Jonathan M.

Schmerling, Esq. of Dentons Cohen & Grigsby. Barton Cowan, POA for Appellant, was carbon copied on the emails. The emails were dated between November 1st through 12th, 2021, stating the subject as "Agency." The emails are a request from Appellant to change his Durable Financial POA. The email correspondence was forwarded from Appellant's email to [Appellee] on November 8, 2021, and to co-defendant son's email on November 12, 2021. The emails are identified on Appellant's Privilege Log as "Estate Planning" and "Estate POA Planning" to which [Appellee] requests the production of said documents.

(*Id.* at 7) (internal record citations and footnote omitted). Considering the disclosure, Appellee's motion asked the court to determine whether Appellant had waived the attorney-client privilege:

72.      Because e-mail correspondence from [Appellant's] counsel containing legal advice relating to [Appellant's] Power of Attorney was disclosed to a third party as set forth above and then also subsequently produced in this litigation, [Appellant] waived the attorney-client privilege with respect to e-mail communications pertaining to this subject matter.

73.      Therefore, [Appellant] waived the attorney-client privilege with respect to **all communications** between Jonathan Schmerling, Esq. and [Appellant] pertaining to [Appellant's] Power of Attorney, and to the extent additional communications exist, those communications should be produced.

(Motion for Determination of Attorney-Client Privilege, filed 8/31/23, at ¶¶72-73) (emphasis added) (citation omitted).

Appellant filed a response to Appellee's motion on September 18, 2023. In it, Appellant argued that he did not waive the attorney-client privilege:

Any waiver of the attorney-client privilege would only apply to the specific communications that were forwarded to third parties and would not waive the privilege with respect to any other communications, even those involving the same

- 4 -

subject matter.

(Response, filed 9/18/23, at ¶34).  Appellant added that his "privilege log is sufficient for the [c]ourt to determine [whether] the attorney-client privilege applies to these remaining communications."  (*Id.* at ¶35).

On October 6, 2023, the court granted Appellee's motion stating: "The objections asserted by [Appellant] to the production of certain documents … based upon the attorney-client privilege, as set for in [Appellant's] privilege log attached hereto, are OVERRULED except for document numbered 1502."[2] (Order, filed 10/6/23).  Appellant timely filed a notice of appeal on October 27, 2023.  On October 30, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Appellant timely filed his Rule 1925(b) statement on November 17, 2023.

On appeal, Appellant raises two issues for this Court's review:

> Whether the trial court erred as a matter of law in finding the attorney-client privilege does not apply to communications between [Appellant] and his attorneys made for purposes of obtaining and providing estate planning advice and estate planning services to [Appellant]?
>
> Whether the trial court erred in failing to conduct an *in camera* review of specific communications between [Appellant] and his attorneys to ascertain whether particular communications were not subject to the attorney-client privilege because, in the trial court's opinion, these communications were intended for disclosure to third parties

---

[2] According to the privilege log, document number 1502 was an item concerning "Initiation of litigation," which Appellant sent to Barton Cowan, Esquire.

- 5 -

because estate planning communications are inevitably disclosed to third parties?

(Appellant's Brief at 4).

As a prefatory matter, we begin by addressing the propriety of this interlocutory appeal. "An appeal may be taken only from a final order unless otherwise permitted by statute or rule." ***Carbis Walker, LLP v. Hill, Barth and King, LLC***, 930 A.2d 573, 577 (Pa.Super. 2007) (quoting ***Ben v. Schwartz***, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999)). Collateral orders are an exception to this general rule. ***See*** Pa.R.A.P. 313.

> To qualify as a collateral order under Rule 313, the order must be separate and distinct from the underlying cause of action. Additionally, it is not sufficient that the issue under review is important to a particular party; it must involve rights deeply rooted in public policy going beyond the particular litigation at hand. Finally, there must be no effective means of review available after an Order requiring the production of documents is reduced to judgment.
>
> Significantly, Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action. This Court has also recognized that an appellant's colorable claim of attorney-client … privilege can establish the propriety of immediate appellate review.

***Berkeyheiser v. A-Plus Investigations, Inc.***, 936 A.2d 1117, 1123-24 (Pa.Super. 2007) (internal citations and quotation marks omitted).

Here, the order at issue is separable from the main cause of action, as this Court can address Appellant's claim of privilege without an analysis of the underlying tort action. Additionally, the issue of attorney-client privilege implicates rights deeply rooted in public policy. ***See id.*** Further, enforcement

of the order would allow Appellant to disclose the disputed documents. Thus, there would be no effective means of review available. *Id.* Accordingly, the order on appeal is collateral to the main cause of action and immediately appealable. *Id.*

We now turn to Appellant's issues, which are related. Appellant argues that "the attorney-client privilege is not automatically waived for communications made to an attorney for 'estate planning' purposes merely because the final product … is intended for future disclosure." (Appellant's Brief at 21). In reaching its conclusion regarding waiver of the privilege, Appellant posits that the court misinterpreted a critical distinction between "facts" and the "communications" through which they are conveyed:

> There is a categorical difference between the contents of the testamentary instrument, or "facts," that are intended to be disclosed to third parties upon the testator's death, and the communications between an attorney and his or her client discussing those "facts" and discussing the legal options, implications, and legal advice surrounding the contents of these testamentary instruments.

(*Id.* at 23). Appellant asserts the court's finding of waiver of the privilege would "restrict the practice of law and prevent clients from being forthcoming in their discussions with their counsel for fear that their communications regarding facts will be disclosed." (*Id.* at 25).

Appellant also contends he did not disclose the emails with the goal of obtaining a tactical litigation advantage, and the information in the emails pertained to Appellant's execution of a power of attorney—a subject that was

distinct from estate planning. Appellant argues that "subject matter waiver, assuming it is valid, … should not apply to waive the attorney-client privilege relative to communications about the distinct subject of estate planning." (***Id.*** at 30). Moreover, Appellant insists that the court erred in failing to conduct an *in camera* review "[t]o the extent [Appellant's] privilege log did not permit the trial court to conduct a meaningful analysis of the claims of privilege[.]" (***Id.*** at 31). Appellant concludes that the court committed an error of law in ruling that the attorney-client privilege did not apply to the documents at issue, and this Court must reverse the order compelling disclosure of the emails. We disagree.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard. To the extent that the question involves a pure issue of law, our scope … of review is plenary." ***Berkeyheiser, supra*** at 1125 (quoting ***Crum v. Bridgestone/Firestone North American Tire, LLC***, 907 A.2d 578, 585 (Pa.Super. 2006)). "The trial court is responsible for 'overseeing discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure.'" ***Id.*** (quoting ***PECO Energy Co. v. Insurance Co. of North America***, 852 A.2d 1230, 1233 (Pa.Super. 2004)).

Pennsylvania Rule of Civil Procedure 4003.1 governs the scope of discovery as follows:

### Rule 4003.1. Scope of Discovery Generally. Opinions and Contentions

(a)    Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Pa.R.C.P. 4003.1(a) (emphasis added).

"Certain materials are privileged and beyond the scope of discovery." *Berkeyheiser, supra* at 1126. "[T]he attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." *Red Vision Systems, Inc. v. National Real Estate Information Services, L.P.*, 108 A.3d 54, 60 (Pa.Super. 2015), *appeal denied*, 632 Pa. 663, 116 A.3d 605 (2015). The privilege is defined by statute as follows:

### § 5928. Confidential communications to attorney

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

Despite the language of the statute, communications from an attorney to a client—not just communications by a client to an attorney—are protected under Pennsylvania law. The purpose of the attorney-client privilege is to foster a

- 9 -

confidence between attorney and client that will lead to a trusting and open dialogue.

The attorney-client privilege is not absolute. The privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed.

*Perelman v. Raymond G. Perelman Revocable Trust*, 259 A.3d 1000, 1007 (Pa.Super. 2021) (internal citations and quotation marks omitted). "[D]isclosure to a third party generally waives the attorney-client privilege[.]" *BouSamra v. Excela Health*, 653 Pa. 365, 383, 210 A.3d 967, 977 (2019).

"Under federal decisional law, the general rule regarding the voluntary disclosure of privileged attorney-client communications is that the disclosure waives the privilege as to all other communications on the same subject." *Bagwell v. Pennsylvania Dept. of Educ.*, 103 A.3d 409, 418 (Pa.Cmwlth. 2014), *appeal denied*, 632 Pa. 678, 117 A.3d 1282 (2015)[3] (citing *Nationwide Mut. Ins. Co. v. Fleming*, 605 Pa. 468, 992 A.2d 65 (2010) (opinion in support of affirmance; equally divided Court)).

The rationale underlying the waiver of the attorney-client privilege in this situation is one of fairness. Courts recognize that, in litigation, it would be fundamentally unfair to allow a party to disclose opinions that support its position and to

---

[3] *See also Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 371 (2010) (stating: "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate").

- 10 -

simultaneously conceal those that are unfavorable or adverse to its position.

In ***Fleming***, in the opinion in support of affirmance, Justices Eakin and Baer reasoned that the attorney-client privilege is waived by disclosing documents reflecting the same subject as the withheld documents. The Justices explained a party in litigation may not selectively disclose records that help its position, while protecting others on the subject as privileged, because to do so is to wield the privilege as both a sword and a shield. To do so is fundamentally unfair to the opposing party, in addition to not serving the interest in candor to the courts.

***Id.*** (internal citations and quotation marks omitted).

Instantly, the trial court found that Appellant disclosed the emails and failed to rectify the disclosure:

[Appellee's] Motion for Sanctions, Exhibit R, shows Appellant had forwarded the allegedly privileged email[4] to Appellee on November 8, 2021, and to co-defendant son on November 12, 2021. The moment the email was shared with third parties they were no longer protected by attorney-client privilege. Co-defendant son proceeded to use the reply all function, sending the email thread to all carbon copied individuals further disclosing it to third parties. Therefore, the emails are no longer privileged and are discoverable by [Appellee].

Appellant allowed the email to be disclosed to others outside the confines of the Attorney-Client Privilege. This disclosure, even if accidental, was never rectified.

(Trial Court Opinion at 11-12) (record citations omitted). The court also analyzed our Supreme Court's decision in ***Fleming***, observing that the

---

[4] Although the court referred to a singular email, our review of Exhibit R reveals that Appellant forwarded a series of emails to Appellee and Leigh Brand.

- 11 -

opinions in support of affirmance and reversal both "recognized subject matter waiver." (*Id.* at 13). *See also Fleming, supra* at \_\_\_, 992 A.2d at 69-70. Consequently, the court found subject matter waiver "applicable to any document referencing the POA." (*Id.*) Considering the relevant case law, we cannot say that the court committed legal error here. *See BouSamra, supra*; *Fleming, supra*.

Regarding its review of the documents at issue, the court noted:

A review of the filed privilege log leads to the conclusion subject matter waiver is applicable to bates stamped 1515, an email dated November 5, 2021, page 4 of 4.

The remaining entries on the October 3rd, 2023, privilege log (ECF 135) are not within the protection of the attorney-client privilege. While the court did not conduct an *in camera* review on each of the items listed, the court is confident the attorney-client privilege does not shield disclosure of the remaining entries. During argument the court on several occasions raised the issue of emails between Appellant and his lawyer/lawyers for purpose of Estate Planning concluding the emails were not confidential communications.

\*   \*   \*

The purpose of all items listed on the privilege log were intended for disclosure to third parties in documents such as a will, irrevocable trust, power of attorney, insurance policies, and option agreement to purchase interest in property. In the "summary" section of the privilege log it summarizes the specific email and/or emails.

[A] series of emails support the court's ruling. Appellant's Counsel invoked attorney-client privilege on a series of emails which were disclosed to a third party, [Appellee]. Appellant's Counsel conceded at argument the disclosure to a third party defeated the attorney-client privilege. A detailed review of these emails at Exhibit R (bates stamp R.

> Brand 1372-1375) leads to the inescapable conclusion there were no confidential communications either from the client to attorney and vice versa attorney to the client in the first instance. The emails address which person/agent holds the POA for Appellant. Unequivocally it was the intent of the Appellant and counsel that such matter/matters would be disclosed to third parties. The communications were never intended to be confidential. All of the items listed in the four-page privilege log involve matters that were intended to be disclosed to third parties.

(Trial Court Opinion at 13-14) (record citations omitted). To the extent Appellant argues that the court erred by failing to conduct an *in camera* review, the court reviewed Appellant's privilege log and the emails attached to Appellee's motion. (**See** Motion for Determination of Attorney-Client Privilege at Exhibit R). The court also had the benefit of argument from counsel during multiple hearings. Thus, the existing record enabled the court to conduct a meaningful analysis of Appellant's privilege claim, and we cannot say that additional *in camera* proceedings were necessary. Accordingly, we affirm the order granting Appellee's motion seeking a determination of Appellant's claim of attorney-client privilege.

Order affirmed.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Olson files a concurring and dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/26/2025