J-A19008-24

2024 PA Super 290

| | | |
|---|---|---|
| DAVID MCKEEHAN AND MARY MCKEEHAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | No. 1494 MDA 2023 |
| THE MILTON S. HERSHEY MEDICAL CENTER; PATRICK MCQUILLAN, MD; ZOULFIRA NISNEVITCH-SAVARESE, MD, PROLUNG NGIN, CRNA; GREANNE GRAMLING, CRNA; AND JILL KELLER, CRNA | : | |

Appeal from the Order Entered October 18, 2023
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2019-CV-3124-MM

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.*

OPINION BY PANELLA, P.J.E.:                    **FILED: DECEMBER 6, 2024**

Appellants, David McKeehan ("Mr. McKeehan") and Mary McKeehan, appeal from the order entered in the Dauphin County Court of Common Pleas on October 18, 2023, granting the motion to compel filed by Appellees, Milton S. Hershey Medical Center, et al. Relevantly, the order compelled the disclosure of notes, recordings, photos, and videos of meetings attended by Appellants and their experts. After careful review, we reverse the order of the trial court and remand for proceedings consistent with this decision.

_____

* Former Justice specially assigned to the Superior Court.

The trial court concisely summarized the pertinent factual and procedural background of this case as follows:

> [Appellants] allege [Appellees] negligently monitored [Mr.] McKeehan while providing anesthesia during a surgery on August 28, 2017. They further allege [Appellees] failed to monitor and maintain Mr. McKeehan's blood pressure and related levels during surgery, such that he suffered post-operative vision loss. [Appellants] claim that Mr. McKeehan is now permanently blind as a result of [Appellees]' negligence.
>
> On June 20, 2023, [Appellants] provided [Appellees] with the expert report of Mary Ann Miknevich, MD, which was dated May 26, 2023. Thereafter, on July 30, 2023, [Appellants] provided [Appellees] with the Life Care Plan for David McKeehan, which was prepared by Alex Karras on June 27, 2023. In both expert reports, there were numerous references to conferences and meetings that occurred between Dr. Miknevich and Mr. Karras as well as a conference between Mr. Karras and Christian Kcomt, M.D. who provided psychiatric care to Mr. McKeehan in the spring of 2020. There was also a conference that occurred on April 12, 2022 that involved both [Appellants], Dr. Miknevich and Mr. Karras. Some of these conferences also included [Appellees]' counsel, but many did not.
>
> [Appellees] sought any and all notes, recordings, photos or videos that were taken during these conferences. [Appellants] objected on the basis of attorney-client privilege and/or the work product doctrine. [Appellees] filed a motion to compel this discovery on October 5, 2023, and [Appellants] filed a response. [The trial court] held a discovery conference on October 18, 2023 and issued an order that same day granting [Appellees]' motion to compel and ordering the production of any and all transcripts, notes, recordings, photos, videos, and/or other information prepared and/or received by Mr. Karras and/or Dr. [Miknevich] during the conferences and interviews referenced in their reports.

Trial Court Opinion, 11/28/23, at 1-2 (unnecessary capitalization omitted).

This timely appeal followed.

Appellants raise five issues for our review, all of which involve allegations the trial court erred in granting Appellees' motion to compel. Before we address the merits of Appellants' claims, we must first determine whether an appeal properly lies from the interlocutory order at issue.

We have previously concluded a non-final discovery order can be subject to appellate review pursuant to the collateral order doctrine if a "colorable claim" of privilege is raised. **See Saint Luke's Hosp. of Bethlehem v. Vivian**, 99 A.3d 534, 540 (Pa. Super. 2014). We have explained:

> We are permitted to review [a] trial court's ... discovery order pursuant to the collateral order doctrine. Pa.R.A.P. 313(a) (providing that "[a]n appeal may be taken as of right from a collateral order of [a] [...] lower court"). Specifically, we recognize that "discovery orders involving privileged material are [...] appealable as collateral to the principal action pursuant to Pa.R.A.P. 313" because "once purportedly privileged material is divulged, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot." **T.M. v. Elwyn, Inc.,** 950 A.2d 1050, 1056–1057 (Pa. Super. 2008) (citations and internal quotation marks omitted); **see Berkeyheiser v. A–Plus Investigations, Inc.,** 936 A.2d 1117, 1123–1124 (Pa. Super. 2007) (stating that "Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action").

**Barrick v. Holy Spirit Hospital of the Sisters of Christian Charity**, 32 A.3d 800, 804 n.5 (Pa. Super. 2011).

Here, Appellants challenge the order below on several bases: that notes taken by an expert witness fall within the definition of drafts and therefore are protected from disclosure; that the court had to determine if good cause existed in order to compel expert discovery beyond the scope of the facts and

opinions provided in the expert reports; that the records in questions are privileged under two different theories – work product and attorney client privilege; and that the opposing party cannot compel expert thoughts and opinions beyond those stated in expert reports.

We are persuaded that the discovery order at issue, involving allegedly privileged information, is appealable as collateral to the principal action pursuant to Pa.R.A.P. 313.

Appellants raise the following issues for our review:

A. Whether the lower court committed an error of law when it held that notes taken by an expert witness do not fall within the definition of drafts as stated in Pa.R.C.P. No. 4003.5?

B. Whether the lower court committed an error of law when it compelled expert discovery beyond the scope of the facts and opinions they provided in their reports without first determining that good cause exists for discovery beyond that allowed by Pa. R.C.P. 4003.5?

C. Whether the lower court committed an error of law when it held that the attorney-client privilege does not attach to communications among counsel, clients, and experts hired for the purpose of litigation?

D. Whether the lower court committed an error of law when it held that work product protection does not attach to communications between counsel and expert witnesses hired for the purposes of litigation?

E. Whether the lower court committed an error of law when it held that expert thoughts and opinions beyond those stated in expert reports could be compelled by the opposing party?

Appellants' Brief, at 5-6 (suggested answers omitted).

Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary. *See Berkeyheiser*, 936 A.2d at 1125.

The order at issue instructed Appellants to produce "any and all transcripts, notes, recordings, photos, videos, and/or other information prepared and/or received" by Appellants' experts during conferences and interviews conducted in preparation of their expert reports. Order, 10/18/24, at 1. These conferences and interviews included meetings attended by Appellants, their experts, and their counsel, and meetings between both experts. In its 1925(a) opinion, the trial court maintains its belief that the compelled disclosures fall within the scope of Pennsylvania Rules of Civil Procedure Rule 4003.5. *See* Trial Court Opinion, 11/28/23, at 4. The trial court reasons that "the rules require that an opposing party be provided with the facts and data upon which an expert opinion is based, regardless of how they obtained that information." *Id.*

Appellants argue Pa.R.C.P. 4003.5 limits discovery of an expert witness to the facts and opinions to which he will testify, and the bases for those facts and opinions. Appellants aver that discovery of the notes and transcripts from interviews involving Appellants, their expert witnesses, and at times Appellants counsel, are not permitted under Pa.R.C.P. 4003.5(a)(1).

Appellants also assert Appellees have failed to show cause for supplemental discovery as required under Pa.R.C.P. 4003.5(a)(2).

In an amicus brief, the Pennsylvania Association for Justice ("PAJ") agrees Pa.R.C.P. 4003.5 does not allow the disclosure compelled here. Specifically, the PAJ asserts Pa.R.C.P. 4003.5 permits expert interrogatories in the form of expert reports; any expert discovery beyond the expert's report is only permitted upon a showing of good cause. Accordingly, the PAJ concludes the trial court disregarded the limits of expert discovery permitted by Pa.R.C.P. 4003.5, by ordering the disclosure of attorney-expert communications and expert to expert, and expert to treating physician communications. The PAJ argues the experts' reports here explicitly disclose what information was exchanged and how that information was relied upon in formulating the experts' opinions. Accordingly, there is no cause for further discovery outside of the expert report.

The crux of Appellants' claims concerns our interpretation of Pa.R.C.P. 4003.5, "Discovery of Expert Testimony. Trial Preparation Material." This rule provides for the "[d]iscovery of facts known and opinions held by an expert … acquired in anticipation of litigation or for trial", Pa.R.C.P. 4003.5(a), and states in pertinent part:

> (1) A party may through interrogatories require
>
> > (A) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

> (B) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.
>
> (2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.
>
> …
>
> (4) A party may not discover the communications between another party's attorney and any expert who is to be identified pursuant to subdivision (a)(1)(A) or from whom discovery is permitted under subdivision (a)(3) regardless of the form of the communications, except in circumstances that would warrant the disclosure of privileged communications under Pennsylvania law. This provision protects from discovery draft expert reports and any communications between another party's attorney and experts relating to such drafts.

Pa.R.C.P. 4003.5(a)(1)-(2), (4).

> Our Supreme Court has interpreted how Pa.R.C.P. 4003.5 interacts with the general scope of discovery, announcing that "[Pa.R.C.P.] 4003.5 should be read to restrict the scope of all discovery from non-party witnesses retained as experts in trial preparation." *Cooper v. Schoffstall*, [] 905 A.2d 482, 492 ([Pa] 2006) (emphasis added). Thus, according to our Supreme Court, any request for discovery not covered under Pa.R.C.P. 4003.5(a)(1) shall be channeled "through the Rule's 'cause shown' criterion."
>
> Under Pa.R.C.P. 4003.5(a)(1), the rule allows a party to submit interrogatories to any other party, requiring the opposition to identify each of their expert witnesses as well as "to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." … We also underscore that Pa.R.C.P.

- 7 -

> 4003.5(a)(1) narrowly defines the substantive inquiries that a party may require an opposing expert to answer in an interrogatory. As this section of the rule specifies, a party may only require opposing experts to state the facts and opinions to which they are expected to testify and to summarize the grounds for each such opinion. Any other interrogatory, aside from these two specific inquiries, exceeds the scope of the plain language contained within Pa.R.C.P. 4003.5(a)(1). Consequently, as indicated by our Supreme Court's construction of Pa.R.C.P. 4003.5, to obtain "further discovery" regarding the testimony of an expert witness by means other than this narrowly defined set of interrogatories, a party must show cause and acquire a court order for the additional discovery. Pa.R.C.P. 4003.5(a)(2) (providing "[u]pon cause shown, the court may order further discovery by other means"); *See Cooper, supra* at 492.

*Barrick*, 32 A.3d at 809-10 (emphasis and some citations omitted).

Here, in September 2019, Appellees requested answers from Appellants to expert witness interrogatories. In October 2019, Appellants responded they had not yet determined who they would call as testifying expert witnesses yet. Appellants assured they would supply expert reports pursuant to Pa.R.C.P. 4003.5 once the experts were determined. In June 2023, Appellants provided an expert report completed by Dr. Miknevich, and a Life Care Plan submitted by Mr. Karras.

In October 2023, Appellees filed a "motion for discovery conference to compel production of transcripts, notes, recordings, photos, videos, and/or other information relied upon by expert witnesses." Notably, Appellees did not contend the facts in the reports were incorrect or that the experts' opinions were not the opinions of the authors of the reports. Rather, Appellees simply contended that they are "entitled to discover all information possessed by

[Appellants], [Appellants]' counsel, and [Appellants]' experts that provides information as to the contents and discussions held by and between their experts as these discussions were relied upon by the experts in forming their opinions." Motion to Compel, 10/5/23, at 5 (unnecessary capitalization omitted).

It is notable that many of the cases cited and relied on by Appellees in their motion to compel, and on appeal, are either inapposite or easily distinguished from the case in front of us. For example, Appellees continue to cite to *Farda v. Chelsea Prop. Group. Inc.*, 81 Pa. D&C 4th 108 (C.P. Philadelphia 2006) for the proposition that "[a]n expert's report must provide the opposing party with sufficient information to avoid surprise at trial and permit appropriate pretrial preparation, including the filing of warranted pretrial motions." Motion to Compel, 10/5/23, at 6.

In *Farda*, a court of common pleas decision[1] involving property appraisal, the expert report was found to be insufficient under Rule 4003.5(a)(1)(b) because it failed to fully identify the factual basis on which the opinion had been rendered. *See id.* at *1. There, the report concluded the

---

[1] This Court is not bound by decisions of the court of common pleas, even if the decision is directly on point. *See Goddard v. Heintzelman*, 875 A.2d 1119, 1121 (Pa. Super. 2005) (holding this Court is not bound by decisions of the court of common pleas and is free to reach contrary holdings); *see also Barren v. Commonwealth*, 74 A.3d 250, 254 n.2 (Pa. Super. 2013) (observing decisions from the courts of common pleas are not binding on the Superior Court). Notably, as explained more below, *Farda* is not on point.

proposed project has or could have received all of the necessary approvals to be constructed based on an interview in which "various developmental issues" were discussed. *Id.* The expert conclusions further relied on "[v]arious data on the surrounding Pocono real estate market were gathered. Numerous published transactions including comparable properties were reviewed. We have also spoken to local brokers and appraisers." *Id.* None of the referenced information was identified, and none of the third parties mentioned were testifying.

The *Farda* court found that "[b]ecause the conversations, reported as the basis for opinion reveal no content, the defendant is unable to file appropriate pretrial motions or prepare for trial." *Id.* at *3. Accordingly, the court concluded the expert report failed to describe all material considered and therefore failed to identify the substance of the facts to which the expert was expected to testify and failed to provide the basis for the opinions expressed. *See id.* at 1.

Unlike the expert report in *Farda*, the reports at issue in this case fully described all material considered. Dr. Miknevich's expert report specifically lists the records she considered, including numerous medical records. Not only does Dr. Miknevich list these records, she spends over 10 pages thoroughly summarizing the medical history from those records. Dr. Miknevich then goes on to describe, at length, an interview and evaluation of Mr. McKeehan at his home on February 1, 2020, followed by an updated zoom interview on April

- 10 -

12, 2022. Dr. Miknevich's detailing of what was discussed on both of those dates is, frankly, quite extensive, spanning multiple pages. The report also includes a description of physical examinations performed on each of those dates. It is noted that the initial interview and examination on February 1, 2020 was held at the McKeehan home, and included Milknevich, Mr. McKeehan, Mrs. McKeehan, Karras, and Attorney Christopher. The updated interview held in April on Zoom, was held with the McKeehans and Karras.

Meanwhile, the Life Care Plan prepared by Mr. Karras is similarly extensive, spanning 54 pages. Mr. Karras states in an introduction that he conducted an in-person interview with Mr. McKeehan on February 1, 2022 and a teleconference on April 12, 2022. He also reviewed Mr. McKeehan's medical records. Similar to Dr. Miknevich's report, Mr. Karras thoroughly summarized his review of Mr. McKeehan's relevant medical history. He also states that he conducted multiple conferences with Dr. Miknevich regarding her evaluations of Mr. McKeehan and her resulting expert report. Karras concisely, but clearly, described everything that was discussed during those conferences. Mr. Karras then details, at length, his summary of the interviews of Mr. McKeehan on February 1, 2020, and April 12, 2022. Finally, Mr. Karras provides a life expectancy chart, followed by a projected life care plan, including costs.

Mr. Karras also later submitted an addendum report. The addendum describes in detail one more conference he had with Dr. Miknevich, in order

to explain why Mr. Karras revised his Life Care Plan to reduce the estimated need for future psychotherapeutic care.

Upon review, it is clear both of these expert reports provide "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa.R.C.P. 4003.5(a)(1)(B). Dr. Miknevich determined what care Mr. McKeehan needs and authored a comprehensive report explaining her conclusions, the basis for her conclusions, and the facts she relied upon. Mr. Karras thereafter determined the cost of the care prescribed by Dr. Miknevich.

The reports specifically list the dates of any interviews and who was included. The reports explicitly detail everything that was discussed during those interviews. In addition, both the experts and the McKeehans plan to testify at trial and can be further examined on the details included in those interviews. There is nothing mysterious and secretive about the interviews conducted. The extensive summary of the interviews in question leaves nothing to the imagination that would "unfairly surprise" the opposition.

Appellees also assert "a defendant may challenge pretrial whether the expert has truly applied expertise to an issue or is merely parroting the opinions of others." Motion to Compel, 10/5/23, at 7. Appellees cite to **_Primavera v. Celotex Corp._**, 608 A.2d 515 (Pa. Super. 1992), for the proposition that an expert "should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment."

*Primavera*, 608 A.2d at 521. Appellees fail to recognize that the basis for that proposition is that a non-testifying witness will not be on the witness stand and will not be available for cross-examination. *See id*. Here, there are no opinions of third parties who are not subject to cross examination which were relied upon. There is no question the conclusions of the experts are their own. The interviews conducted only included information from the McKeehans themselves, and how Mr. McKeehan's blindness has affected their lives. There is no discussion or mention of any non-testifying third party.

Based on the above, we conclude there was no basis for any additional discovery. Accordingly, the trial court's order exceeds the scope of the expert witness discovery permitted under our rules.

Further, even if there were cause for further discovery, we can find no authority for the invasive disclosure compelled here, i.e. requiring the production of "all transcripts, notes, recordings, photos, videos, and/or other information prepared and/or received" by both experts during the conferences.

Compliance requires only that a party submit a *summary* report of his expert's testimony. **See** Pa.R.C.P. 4003.5(a)(1)(B). If the recipients of discovery believe their opponent has not sufficiently complied, they have numerous options available to them to rectify compliance. Relevantly, recipients may seek additional discovery from the court "[u]pon cause shown." Pa.R.C.P. 4003.5(a)(2); **see Cooper,** 905 A.2d 482. The 2014 comment to

Pa.R.C.P. 4003.5 discusses production of a supplemental report if additional discovery is found necessary upon cause shown.

Our rules simply do not authorize the production of "all" notes and other information and materials prepared and/or received by an expert, even where there is a question about what that expert relied in preparing the report. Notably, there was no question here. Appellees have not alleged any of the underlying facts in the reports are inaccurate or that the experts' opinions are not their own or are unsupported. Further, the trial court did not expressly find that cause existed for further discovery and in fact, never made a determination at all about the competency and completeness of the expert reports. The trial court should have evaluated the experts' opinions as a function of Appellants' compliance with their discovery obligations. In this regard, the court had less drastic remedies available to it to cure any deficiency in the expert report.

While Appellants raised five issues, they all generally challenge the issuance of the order at issue. Accordingly, due to our disposition in which we find that Appellees' request is beyond the scope of discovery generally, we need not reach Appellants' privilege and specific notes issues.

For all the reasons discussed in our above analysis, we hold that the correspondence at issue in this case is not discoverable under the Pennsylvania Rules of Civil Procedure pursuant to Pa.R.C.P. 4003.5.

Accordingly, we reverse the October 18, 2023 order and remand to the trial court for proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/06/2024