J-A20042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KIA MOTORS AMERICA, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| U-HAUL MOVING AND STORAGE, U- | : | |
| HAUL INTERNATIONAL, INC., U-HAUL | : | |
| MOVING AND STORAGE OF | : | No. 2237 EDA 2024 |
| RIVERVIEW, WECCACOE, | : | |
| PROPERTIES, LP, BPO REALTY | : | |
| GROUP, LP, JOHN DOE 1-5, AMERCO, | : | |
| AMERCO REAL ESTATE COMPANY, U- | : | |
| HAUL COMPANY OF PENNSYLVANIA, | : | |
| SEAL ROOFING COMPANY, MAK | : | |
| SHIPPING, GLOVIS AMERICA, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: U-HAUL CO. OF | : | |
| PENNSYLVANIA | : | |

Appeal from the Order Entered August 13, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200801850

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 13, 2026**

U-Haul Company of Pennsylvania ("U-Haul") appeals from the order granting a new trial entered by the Court of Common Pleas of Philadelphia County after a post-verdict hearing to determine whether after-discovered evidence warranted vacating the jury's verdict, which determined U-Haul to be not negligent with respect to damage to the property of Kia Motors of

_____

[*] Retired Senior Judge assigned to the Superior Court.

America, Inc. ("Kia").[1] Because we find no abuse of discretion by the trial court, we affirm the order for a new trial.

The trial court accurately summarized the evidence at trial and the post-verdict hearing, as follows:

> On April 15, 2019, the roof of a building located at 8 E. Oregon Ave. in Philadelphia detached during a storm. At the time, the building was being leased to and operated by Appellant U-Haul[.] Debris from the roof landed in a nearby lot that was being used by Kia to store approximately 208 vehicles, resulting in at least 182 of the vehicles being damaged and/or destroyed. Kia filed suit against, *inter alia*, Amerco Real Estate Company [("AREC")], who was the owner of the property, and U-Haul, alleging negligence in the maintenance of the roof which in turn led to it [to] detach.
>
> Based on representations from counsel to U-Haul that AREC was merely an out-of-possession owner who had nothing whatsoever to do with the roof in question, Kia agreed to dismiss AREC from the case. During the discovery process, Kia requested the production of all documents and photographs related to any pre-incident inspection of the building. U-Haul did not produce any photographic evidence documenting the prior condition of the roof as it maintained that it took possession of the property without an inspection having been performed. Lacking evidence of the building's pre-incident condition, Kia had to rely upon [its] own expert testimony at trial to create an inference of negligence on the part of U-Haul, *i.e.*, that the flaw which caused the roof to become detached would have been discovered during an inspection if U-Haul had performed one.
>
> However, Kia's theory was subsequently upended when U-Haul's own expert witness, Timothy Carlsen, stated during his trial testimony — much to the surprise of Kia — that the building had in fact been inspected by U-Haul before it took possession of the property. Moreover, he testified that U-Haul possessed photographs of the exterior of the building, including the roof, that were taken at around the time it assumed occupancy. Following

---

[1] Although interlocutory, "[a]n order in a civil action or proceeding awarding a new trial," is appealable as of right. Pa.R.A.P. 311(a)(6).

Carlsen's testimony, Kia moved for a mistrial on the grounds that such photographs were wrongfully withheld during pre-trial discovery. The [c]ourt denied the motion.

At the close of trial, the jury returned a verdict in favor of U-Haul, finding that it was not negligent. Following the verdict and in light of the unproduced photographs, Kia filed a post-trial motion seeking a new trial on the grounds of discovery abuse. It argued that the photographs, and by extension the knowledge that a building inspection had in fact been performed by U-Haul, were concealed to undermine Kia's central argument at trial. The [c]ourt allowed Kia to supplement the record with post-trial discovery in support of its motion.

U-Haul maintained that its expert only had access to thumbnail copies of the photographs in question, but that the native photos belonged to the landlord of the property, which Kia had not subpoenaed. And crucially, U-Haul conceded that it had made a strategic decision not to pass the thumbnails during discovery. Instead, it relied on a master document submitted to Kia — titled Architectural As-built Drawings & Facility Documentation Of 8 East Oregon Avenue — which indexed a number of photographs and documents but without any clear notification that some of these photos were of the roof in question. Any evidence used by U-Haul's expert, it argued, was available to Kia had it done its due diligence during discovery. However, given U-Haul's assurances that no inspection had been conducted of that roof, it was not unreasonable for Kia to assume that the master document did not reference any roof photos, especially given the absence of any notification to the contrary. The [trial court], after receiving a significant volume of written and oral argument from both parties, granted Kia's post-trial motion and awarded a new trial on the issue of after-discovered evidence. Particularly persuasive was a native photo taken pre-incident and eventually provided during post-trial discovery that appeared to show existing damage to the roof in question.

Opinion, Erdos, J., 11/26/24 ("Trial Court Opinion"), 1-3.

In our own review of the record, to augment the trial court's opinion, we note the following. Trial commenced on July 21, 2023. On July 26 and 27, Carlsen, a forensic engineer, testified as an expert witness in the field of

engineering and building construction, with respect to his opinion on the construction and maintenance of the roof that detached in the storm. *See* N.T. Trial, 7/26/23, 109, 114, 141-144. During cross-examination, he revealed, for the first time, that photographs of the roof had been taken on April 1, 2016, at the time AREC took ownership over the building and prior to the time that U-Haul took possession and assumed responsibility for maintenance. *See* N.T. Trial, 7/27/23, 20-21, 51. The photographs were attached as thumbnail photographs to architectural drawings, provided to AREC, of the building as it was built, and had been given by U-Haul to the expert in anticipation of his providing an opinion. The thumbnail photographs attached to the drawings were provided to Kia, mid-trial, and were difficult to view because of their respective sizes. The thumbnail photographs were reproductions in JPEG format of original digital photographs without any of the metadata that would have been included with the original digital photographs. Kia moved for a mistrial. *See id.*, 162-164. The trial court denied the motion. *Id.*, 165. On July 28, 2023, the jury returned its verdict that U-Haul was not negligent. N.T. Trial, 7/28/23, 68.

Kia filed a post-trial motion seeking, *inter alia*, a new trial based on after-discovered evidence and further requesting post-trial discovery. *See* Appellee's Post-Trial Motion, 8/4/23. In pertinent part, Kia alleged that U-Haul consistently asserted throughout discovery that (1) "it produced all information and documentation depicting the roof, and no other relevant documents existed," and (2) "no one independently inspected the roof system

… before the roof disintegrated in April of 2019." ***Id.***, 2. Kia also alleged that only four of thirty-nine pages of the document, marked at trial as P-258 when disclosed by U-Haul's witness, had been produced in discovery, which caused prejudice to Kia because the photographs were proof supporting Kia's theory of liability while contradicting U-Haul's defense – depicting damage to the western edge of the roof and other deterioration – and also "directly countered one of [Kia's] central themes: U-Haul was negligent in failing to inspect the subject building before occupying it." ***Id.***, 2-3. Kia argued that it had asked for photographs and for everything given to U-Haul's expert in anticipation of his opinion. ***See*** N.T. Post-Trial, 8/8/24, 68 (U-Haul admitting that it was "fair to say" P-258 would have been responsive to two overlapping discovery requests). U-Haul, in response, asserted that it had disclosed the existence of the photographs – located on the first page of the four pages of P-258 that it produced – in a "list of drawings" that included reference to exterior photos, among other things. ***See*** Appellant's Answer in Opposition to Motion for Post-Trial Relief, 8/23/23, 2-3; ***see also*** Appellant's Brief, 9. It also asserted that Kia had an opportunity during trial to both examine the documents and to cross-examine U-Haul's expert and/or recall its own expert. ***See*** Appellant's Answer in Opposition to Motion for Post-Trial Relief, 8/23/23, 2.

During post-trial discovery, Kia repeatedly sought the photographs attached to P-258 in the original format, metadata included, which was a request the trial court deemed "fair." ***See*** N.T. Post-Trial, 10/4/23, 4-8, 21. U-Haul filed a formal response opposing the disclosure on the grounds that

Kia never requested the photographs "during pre-trial discovery" and that U-Haul's expert "did not reference the photographs at issue during his direct examination at trial," while also testifying during cross-examination that he did not rely on the photographs to formulate any opinion. **See** Appellant's Response to Post-Trial Demand for "A4" Photographs, 1. It also reported that the requested photographs, in the possession of "a third-party," AREC, had "now been provided to Kia." **Id.**, 2; **see also** Appellant's Response to Post-Trial Demand for "A5" Photographs, Attached Affidavit of Thomas R. Casey, Vice President of AREC. U-Haul later reported the production of additional photographs, some in the possession of the company that had prepared the architectural drawings for AREC, bringing the total of photographs produced during post-trial discovery to 107 digital photographs. **See** Appellant's Final Response to Post-Trial Demand for Digital Photographs, 12/15/23, 1-2. At least one of these new photographs depicted deterioration on the side of the roof that Kia's expert opined was the location of the detachment that led to the damage of Kia's property. **See** Trial Court Opinion, 3; **see also** N.T. Post-Trial, 8/8/24, 58-67.

On August 8, 2024, the trial court reviewed the state of the record with the parties and heard oral argument on Kia's motion for a new trial. The trial court asked U-Haul for its reasoning in turning over only four pages of P-258 during pre-trial discovery, which pages included drawings of other buildings. **See** N.T. Post-Trial, 8/8/24, 65-66. U-Haul stated that the limited production was to give an overall picture of the property and the buildings, and noted

that it included "multiple references to photographs … identifies the owner of this document as AREC … [and] the creator of this document as [an unrelated company]." *Id.*, 67. U-Haul then agreed that it was "fair" to say that the packet delivered to its expert was the "answer to more than one request for discovery" by Kia. *Id.*, 68. Counsel further confirmed that U-Haul had "the entirety of [P-258]" when discovery responses were first prepared. *See id.*, 68-69. The trial court then asked:

> The Court: The question is, when you handed this over, why didn't you hand over everything that now encompasses P-258? …
>
> [U-Haul's Counsel]: I would tell you it was a strategic decision, litigation-based decision to hand over the documents we did. We felt they were responsive to the request and roofing issue. That was the basis for why we turned over the four [pages] we did.

N.T. Post-Trial, 8/8/24, 69.

The court clarified other matters concerning pre-trial discovery, including that U-Haul's expert Carlsen had the thirty-nine-page packet of documents and thumbnail photographs more than a year before the trial. *See* N.T. Post-Trial, 8/28/24, 73-75. In addition, when the court asked U-Haul to explain why it did not at the time believe it had an obligation to produce the thumbnail photographs to Kia, it relied on the small size of the thumbnail photographs, and the fact it was not in the position of the plaintiff, to support its determination that the photographs were not "responsive" to the request. *See id.*, 85.

The court then proceeded to hear argument on the motion for a new trial. In pertinent part, U-Haul argued that with respect to third-party discovery pre-trial, it had set out a "defined limited role as to what [it was] going to be providing documents to, [Kia] never challenged them," "never sent supplemental discovery requests" and should have communicated with U-Haul to ask for the photographs referenced on the first of four pages of P-258 that U-Haul provided in pre-trial discovery. N.T. Post-Trial, 8/8/24, 124. U-Haul argued that Kia "never sent a subpoena to AREC as the landlord out of possession for any documents," or to the person identified on the "cover sheet" as the person who prepared the drawings. *Id.*, 125. "Critically, [] Carlsen specifically testified … that he did not rely on nor otherwise utilize the as-built drawings in his pre-litigation report or in formulating his trial opinions and testimony." *Id.*, 126. U-Haul argued that Kia lacked due diligence in conducting pre-trial discovery and waited until post-trial to do what should have been done before. *See id.*, 128-29. U-Haul also argued that it "never had possession of the 'smoking gun'" photograph, produced through AREC from its consultant in post-trial discovery. *Id.*, 131. U-Haul concluded that because it never possessed that key photograph, combined with the lack of due diligence by Kia pre-trial, post-trial relief should be denied. *See id.* The trial court held its decision under advisement. *Id.*, 135. Five days later, the trial court granted a new trial. *See* Order, 8/13/24.

U-Haul timely filed a notice of appeal on August 21, 2024. The trial court ordered, and U-Haul filed, a statement of errors complained of on appeal. *See* Order, 8/22/24; Appellant's Statement, 1-5; Pa.R.A.P. 1925(b).

In this appeal, U-Haul raises the following two-part question for review:

Did the trial court abuse its discretion or err as a matter of law in granting Plaintiff's request for post-verdict discovery and thereafter granting a new trial on the basis of after-discovered evidence where:

(1) the new evidence was available through the exercise of due diligence prior to trial and thus does not constitute after-discovered evidence; and

(2) the new evidence would not likely compel a different verdict[?]

Appellant's Brief, 4.

U-Haul argues that the trial court abused its discretion by granting a new trial based on after-discovered evidence. *See* Appellant's Brief, 34. It first contends that after-discovered evidence is such evidence that "could not have been obtained at the trial by reasonable diligence," and the moving party must "convincingly show" it could not obtain the evidence. *Id.* (citing cases). Because U-Haul made Kia "aware" of the "existence" of the thumbnail photographs in October 2021 during pre-trial discovery, and Kia did not seek, prior to trial, "the photographs listed on the cover page [of the four pages it produced], move to compel production of the photographs, subpoena the photographs from AREC or John Albarano (who created the as-built drawings), or seek to depose any [U-Haul] designee, AREC designee[,] or Mr. Albarano," Kia failed to "convincingly establish that the [post-trial] photographs and

deposition testimony … were not available through the exercise of due diligence prior to trial." *Id.*, 38.

U-Haul also argues that to warrant a new trial, the after-discovered evidence "must be such as would likely compel a different result." Appellant's Brief, 45 (citing cases). It relies on the complex corporate structure of the U-Haul Moving and Storage, in particular the separate, but wholly-owned corporations U-Haul and AREC, to contend that the cross-examination of its expert, which revealed the existence of the photographs, was, and remains, irrelevant, to Kia's cause of action against U-Haul. *Id.*, 47.[2] To the extent that the photographs produced after trial showed roof deterioration, U-Haul argues that the photographs only establish that deterioration existed three-years before the incident without any evidence to show that the deterioration remained or that U-Haul was responsible for it over AREC. *See id.*, 49-51. We find that U-Haul is entitled to no relief.

Our standard of review of the grant of a new trial based on after-discovered evidence

> is whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Commonwealth ex rel. Meyers v. Stern*, 501 A.2d 1380, 1382 (Pa. 1985). … The legal requirements for the grant of a new trial based upon after-discovered evidence are well established: the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility,

---

[2] AREC was dismissed from the case as a defendant by stipulation, about which there was some dispute, but in return for U-Haul accepting responsibility for any actions taken by AREC.

and must be such as would likely compel a different result. ***Stern***, 501 A.2d at 1382; ***Hornick v. Bethlehem Mines Corp.***, 165 A. 36, 37 (Pa. 1933).

***Daniel v. Wyeth Pharms., Inc.***, 15 A.3d 909, 915–16 (Pa. Super. 2011). In conducting this review, there is a "presumption […] that the trial court was justified in granting the new trial." ***Bellettiere v. City of Philadelphia***, 81 A.2d 857. 859 (Pa. 1951); ***Daniel***, 15 A.3d at 916 (similar); ***Matter of Cook***, 527 A.2d 1115, 1116 (Pa. Cmwlth. 1987) (similar).[3] "Because the trial court is uniquely qualified to evaluate factual matters, we will not disturb its decision absent an abuse of discretion or error of law." ***Picca v. Kriner***, 645 A.2d 868, 869 (Pa. Super. 1994).

The trial court examined the record before it in detail with respect to U-Haul's assertion that the additional thirty-five pages of the packet and thumbnail photographs produced after trial, and excluded from the pre-trial discovery, was not after-discovered evidence. The court explained its reasoning for finding contrary to U-Haul's position as follows:

> As a general rule, a party may not cure its own failure to present sufficient evidence at trial by filing a post-trial motion. ***Claudio v. Dean Machine Co.***, 831 A.2d 140, 145 (Pa. 2003). However, there is an exception to this rule where new evidence is discovered after trial. ***Id.*** "After-discovered evidence, to justify a new trial, must have been discovered after the trial, be such that it could not have been obtained at the trial by reasonable diligence, must

---

[3] We are not bound by the decisions of the Commonwealth Court, but "such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Petow v. Warehime***, 996 A.2d 1083, 1088 n.1 (Pa. Super. 2010) (quoting ***Maryland Cas. Co. v. Odyssey***, 894 A.2d 750, 756 n.2 (Pa. Super. 2006)).

not be cumulative or merely impeach credibility, and must be such as would likely compel a different result." *Id.* at 146.

A court should not grant a new trial based on after-discovered evidence unless the proponent can "convincingly show that he was unable to obtain such testimony for the trial by use of reasonable diligence." ***Higbee v. Koziol***, 117 A.2d 707, 709 (Pa. 1955). Kia made such a showing here, demonstrating that despite exercising reasonable diligence during the discovery phase it nevertheless was not provided with the evidence at issue and in fact did not learn of its existence until trial.

The native photographs and drawings were possessed by AREC, the building's owner and landlord. [***See*** N.T. Post-Trial, 2/7/24, 5-6]. AREC was originally a defendant in this case but was dismissed by Kia, along with all other non-U-Haul defendants due to representations made by U-Haul that none of the other defendants bore any responsibility for action nor possessed any discoverable evidence having to do with the operation and maintenance of the property. Exhibit E of Plaintiff's Post-Trial Motion Reply filed 4/10/24.

During post-trial discovery, Todj Meyer, U-Haul's corporate designee, testified that the company turned over none of the photographs at issue during the normal discovery period. ***See*** Deposition of Todj Meyer 57:6-60:18. This [decision] was so despite the fact that Kia's first request for production specifically asked for "any photographs of the Premises before, during, and/or after detachment of the roof(s)." Exhibit M of Plaintiff's Post-Trial Motion Reply filed 4/10/24, Question 8.

U-Haul did turn over a list of drawings in its document production that named 39 architectural diagrams that it had access to. Exhibit P of Plaintiff's Post-Trial Motion Reply filed 4/10/24. Mr. Meyer later agreed that Kia would have expected the documents produced by U-Haul to be limited to only those relevant to the building at issue. Deposition of Todj Meyer 38:23-39:8. Yet most of the drawings on this list pertained to other buildings on the same or adjacent properties, not the building that was damaged. *Id.* at 39:17-41:14. Kia was not on adequate notice that there were also photos of the roof in question and that a motion to compel would be necessary to obtain these photos and other relevant documents.

At a post-trial hearing, U-Haul admitted that it did have access to the JPEG thumbnails, but not the original natives, of the evidence

prior to trial and that this is what its expert relied upon. [N.T. Post-Trial, 10/4/23, 13]. The Court then ordered that U-Haul provide Kia with the native photographs. [*Id.*, 18].

Kia did not learn of the existence of these photos until trial was already underway. Prior to trial, it was repeatedly led to believe not only that such evidence did not exist, but that the actual owner of the photographs, AREC, had no relevant documentation and should be dismissed from the case. Kia's request for production of documents clearly encompassed this evidence. It exercised due diligence during the normal discovery period yet could not obtain this important evidence.

Trial Court Opinion, 4-6.

Our review of the record confirms that the trial court's findings are soundly based on the evidence. We also conclude that U-Haul's argument focuses on the wrong piece of evidence, as it is the native format photograph(s) depicting deterioration on the western edge of the roof that is plainly after-discovered and the basis for granting a new trial. *See* Trial Court Opinion, 3. Nevertheless, U-Haul contends that because Kia "could have requested the photographs from [it] during the discovery period, or … could have sought those photographs from either AREC or Albarano," the finding that Kia could not have obtained the photographs prior to trial with due diligence "defies credulity." Appellant's Brief, 44. We note, U-Haul does not address the court's findings that it persuaded Kia to dismiss AREC, and other defendants, from the case based on its "representations … that none of the other defendants bore any responsibility for action nor possessed any discoverable evidence having to do with the operation and maintenance of the property." Trial Court Opinion, 5. We find that U-Haul's argument that Kia should have compelled production of the thumbnail photographs is

undermined by its "strategic decision" to exclude the thumbnail photographs from disclosure. N.T. Post-Trial, 8/8/24, 69. The thumbnail photographs, which were provided to U-Haul's expert, along with thirty-five additional pages of architectural drawings, were plainly subject to discovery as they were not within any privilege,[4] and as U-Haul admitted, were responsive to at least two lines of discovery request and were in its possession when Kia made the relevant requests. *See id.*, 68-69.

It is on this point – U-Haul's strategic decision not to disclose – that its reliance on *Claudio*, the case also relied on by the trial court for the standard of review, is inapposite. U-Haul contends that *Claudio* prohibits the trial court from relying on any of the post-trial evidence because post-trial discovery should not have been granted. *See* Appellant's Brief, 35-37. However, the issue addressed by our Supreme Court in *Claudio* was whether a trial court could "conduct a post-trial hearing and grant post-trial relief to correct an

_____

[4] We recently stated that the discovery rules "restrict the scope of all discovery from non-party witnesses retained as experts" and reversed an order to compel discovery of a broad range of irrelevant material from a plaintiff's expert. *McKeehan v. Milton S. Hershey Med. Ctr.*, 328 A.3d 1059, 1064 (Pa. Super. 2024). Here, U-Haul's argument presumes that the photographs were discoverable, *i.e.*, not privileged. Further, the photographs of the roof depicting potential deterioration in the location where the roof subsequently detached, and which were given to the expert, are within the "fair scope" of Kia's evaluation of U-Haul's expert opinion. *See Christiansen v. Silfies*, 667 A.2d 396, 402 (Pa. Super. 1995) ("The fair scope inquiry involves a determination of whether the expert report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness") (internal quotation marks and citation omitted).

error alleged [to be] attributable, not to the [trial] court, but to the party seeking relief." ***Claudio***, 831 A.2d at 141. The error in question was the Claudios misnaming the lead defendant in the complaint as Dean Machine Company ("DMC") instead of Dean Machine, Inc. ("DMI"), for which the lead defendant presented corporate documents evidencing corporate creations and transactions leading to DMI, and on which mistake it had moved for summary judgment. ***See id.***, 142.

> The jury rendered both verdicts against DMC. On February 24, 2000, the Claudios filed a post-trial motion to amend the caption and mold the verdict to enter judgment against DMI. On June 8, 2000, the trial court held oral argument on the motion to amend the caption, where the Claudios and DMC debated the issue of successor liability. The trial court granted a continuance to allow the parties to present evidence on this issue, during which period counsel for the Claudios traveled to Rhode Island to depose [the] former counsel to DMC, and … one of the principals of DMI. On July 19, 2000, the trial court concluded the argument, granted the motion of the Claudios to substitute DMI for DMC as the "proper defendant," and molded the verdict to impose liability on DMI.

***Claudio***, 831 A.2d at 142–43. DMI contended that "the trial court erred in conducting a post-trial evidentiary hearing and granting a new trial" pursuant to Pennsylvania Rule of Civil Procedure 227.1, because that rule permits a trial court to correct its own error post-trial, and, in the case under review, the trial court's opinion "indicated that the error … was attributable to the Claudios, finding that it may have allowed amendment to the caption before trial if the Claudios had presented the deposition testimony" it later obtained post-trial. ***Id.*** at 145.

"The failure of a party to present sufficient evidence before or during trial to support a decision in that party's favor cannot be cured by a motion filed pursuant to Rule 227.1." ***Claudio***, 831 A.2d at 145. A motion based on new evidence "discovered after trial," however, is "a common law exception to [the] general rule. ***Id.*** The Supreme Court then concluded that:

> The trial court did not commit an error, based on the information available to it at the time. … Additionally, the Claudios have failed to establish or even argue that the deposition testimony they submitted to the court during the post-trial hearings was not available through the exercise of due diligence prior to trial. Therefore, the Claudios were not entitled to post-trial relief pursuant to Rule 227.1. In certain situations, it may be proper for a trial court to permit a post-trial evidentiary hearing to determine if new evidence offered in support of a post-trial motion constitutes after-discovered evidence. However, where the new evidence cannot be characterized as after-discovered evidence, such an evidentiary hearing is not contemplated by the rules. Accordingly, the trial court erred in granting an evidentiary hearing under the guise of Rule 227.1(a)(5).

***Id.*** at 146.

In contrast to U-Haul's argument, the post-trial discovery was necessary here because Kia's claim was based on the material given to U-Haul's expert but strategically withheld from Kia, which, once given to Kia, led to the indisputably after-discovered "smoking gun" photograph. A claim based on after-discovered evidence is an exception to the rule prohibiting post-trial discovery. ***Claudio***, 831 A.2d at 145. As the trial court found, based on the evidence obtained post-trial, Kia acted reasonably and with due diligence in submitting at least two discovery requests that should have fairly produced the thumbnail photographs provided to U-Haul's expert. ***See*** Trial Court

Opinion, 6; *see also* N.T. Post-Trial, 8/8/24, 68. Because U-Haul's responses during discovery obscured the fact that the photos existed, Kia "was not on adequate notice that there were also photos of the roof in question and that a motion to compel would be necessary to obtain these photos and other relevant documents." Trial Court Opinion, 6. Moreover, the trial court "gave Kia only a brief recess to review miniature versions of the photos that were absent from the report. The trial then continued with Kia unable to properly question [the U-Haul expert] on this new evidence due to not having native photos or the necessary time to review them." *Id.*, 7.

The thumbnail photographs were available to U-Haul, not subject to a claim of privilege, and pertinent to Kia's discovery requests. *See* Trial Court Opinion, 5-6. The strategic decision made by U-Haul to not produce them led both to surprise testimony undermining one theory of negligence, the lack of an inspection, and the post-trial discovery of many native format photographs, at least one of which supported an alternate theory of negligence that U-Haul did not adequately maintain the roof. The trial court granted the new trial "particularly" on the basis of "a native photo taken pre-incident and eventually provided during post-trial discovery that appeared to show existing damage to the roof in question." Trial Court Opinion, 3. Under the facts presented here, where: (1) the thumbnail photographs were produced as a surprise submission while Kia was cross-examining the expert during trial; (2) the tiny photographs could not be properly examined in the time available during trial; and (3) the photographs led to significant new evidence discovered post-trial,

we can discern no abuse of discretion in either the trial court permitting post-trial discovery or its ruling that the evidence discovered after trial from the late production of the thumbnail photographs was properly received as after-discovered evidence. Accordingly, U-Haul is due no relief at this claim.

U-Haul's second argument is that production of the photograph showing "existing damage" to the roof prior to the incident would not likely compel a different result. **See** Appellant's Brief, 45-51.

Contrary to U-Haul's claim, the trial court explained its ruling that production of the new photograph was likely to compel a different result, as follows:

> Evidence that goes to the "heart" of the proponent's case can be said to satisfy this element of the new trial test. [] **Cook**, 527 A.2d [at 1117]. Here, the photographs and drawings of the building do go to the heart of Kia's case because they provide evidence of visible deterioration along the edge of the roof that was detached by the storm. This, in turn, supports Kia's assertion that U-Haul was negligent in allowing the roof to persist in a state where strong winds could cause such damage.
>
> These materials are also evidence of the fact that, despite its earlier claims, U-Haul did in fact perform some sort of inspection of the building prior to taking possession of it. Again, a vital component of Kia's case is that U-Haul should have been aware of the roof's condition yet failed to take corrective action. If the discovery in question, showing apparent pre-incident damage to the roof, had been available to Kia prior to trial, it would have restructured its case to argue negligence on the part of U-Haul in the form of a faulty inspection and/or failure to repair, rather than being forced to ask the jury to infer roof damage and to find negligence in the previously-presumed lack of an inspection. The jury returned a verdict finding no negligence on the part of U-Haul; the native photo would likely have led to the opposite finding.

Trial Court Opinion, 7-8.

In **Cook**, our sister court held that evidence of perjury about an expert's qualifications discovered after trial "went to the heart of Appellants' case" with respect to damages awarded by a jury on the weight it gave the expert's opinion in a property condemnation case. **Cook**, 527 A.2d at 1117. It therefore held that the trial court did not abuse its discretion by awarding a new trial.

Here, we agree with the trial court that the clear photograph unearthed during post-trial discovery depicting "visible deterioration along the edge of the roof that was detached by the storm … supports Kia's assertion that U-Haul was negligent in allowing the roof to persist in a state where strong winds could cause such damage." Trial Court Opinion, 7. Therefore, the withheld evidence which would have led to the new photograph goes to the heart of Kia's negligence action against U-Haul and thereby likely would compel a different result.

U-Haul argues that "even if [the] photograph showed some deterioration, [it] would not likely result in a finding of negligence against [U-Haul]" because it would be based "solely upon speculation and conjecture." Appellant's Brief, 48. We find, however, to the contrary: the photograph of the deterioration supports Kia's expert's opinion that the roof detached from that specific area, and together with the maintenance records produced by U-Haul and relied upon by its own expert, demonstrates the evidentiary connection U-Haul now denies exists. The direct connection, at the very least, raises a question for the jury to decide.

- 19 -

U-Haul further contends that its inspection records show it was not negligent in maintaining the roof. *See* Appellant's Brief, 48-49. However, rather than accepting a litigant's own view of its evidence, that factual issue remains for a jury or factfinder to decide. Lastly, U-Haul contends that it could not be found liable "as the tenant of the property" for AREC's alleged failure to maintain or inspect the roof, *see* Appellant's Brief, 50-52, but this argument runs contrary to the trial court's finding that U-Haul represented that "AREC was merely an out-of-possession owner who had nothing whatsoever to do with the roof in question, [on which] Kia agreed to dismiss AREC from the case." Trial Court Opinion, 2.

Accordingly, we can discern no abuse of discretion in the trial court's conclusion that the after-discovered evidence, which supported the heart of Kia's negligence claim, would likely compel a different result. We therefore conclude that the trial court did not abuse its discretion in granting a new trial based on after-discovered evidence.

Order affirmed. Matter remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/13/2026